CHARLES NARDI ET AL. *v.* AA ELECTRONIC
SECURITY ENGINEERING, INC., ET AL.
(11612)

HEIMAN, FREEDMAN and SCHALLER, JS.

---

Argued May 10—decision released July 27, 1993

*Dennis C. LaGanza,* for the appellants (plaintiffs).

*Lorinda S. Coon,* with whom were *Jeffrey C. Pingpank* and, on the brief, *Louis B. Blumenfeld,* for the appellee (defendant Southern New England Telephone Company).

FREEDMAN, J. This action involves claims of negligence and breach of contract by the defendants with respect to the installation and maintenance of a residential burglar alarm system. The plaintiffs, Charles Nardi and Joan Nardi, appeal from the decision of the trial court granting summary judgment in favor of the defendant Southern New England Telephone Company

(SNET) on the third count of their amended complaint.[1] The trial court determined (1) that the plaintiffs' claim against SNET, alleging the negligent installation of the automatic dialer jack for the alarm system, was barred by the statute of limitations, and (2) that SNET breached no duty to the plaintiffs with respect to its disconnection of the phone line that supported the automatic dialer feature of the alarm system. We affirm the judgment of the trial court.

The affidavits and other materials submitted by the parties accompanying and opposing the motion for summary judgment, taken in the light most favorable to the plaintiffs, reveal the following pertinent facts. The plaintiffs were the owners of a residence located at 75 Sunset Ridge Drive in East Hartford. In 1981, the plaintiffs hired the defendant AA Electronic Security Engineering, Inc. (AA), to provide a burglar alarm system at their residence. The system was designed to sound an audible alarm at the premises and automatically to notify AA by telephone in the event of an unauthorized entry into the house.

To complete the connection of the plaintiffs' alarm system to their telephone line, defendant SNET provided and installed an RJ31X jack. In 1981, SNET was the only entity permitted to install the jack to its own equipment. The RJ31X jack acted as an interfacing device between the alarm system and the telephone line. At all times relevant to this case, the only recognized use for an RJ31X jack was as an automatic dialer.

In 1981, at the time of the installation, the plaintiffs had two telephone lines, the main number and the children's number. The automatic dialer was to be con-

[1] The plaintiffs' contract and tort claims against the named defendant were not the subject of the motion for summary judgment and are not part of this appeal.

nected to the plaintiffs' main telephone line. SNET billed the plaintiffs for connection to the main line.[2]

Contrary to the plaintiffs' instructions, however, SNET connected the jack to the children's line instead of to the main line. The plaintiffs were not informed of this misconnection, and SNET records show, incorrectly, that the jack was connected to the main line.

On January 1, 1987, as part of deregulation, SNET relinquished all claims of ownership to inside wires, including the RJ31X jack. In June, 1989, the plaintiffs' son contacted SNET to request the disconnection of service to the children's line. In July, 1989, SNET disconnected the children's line as requested. Compliance with the request did not require SNET to enter the plaintiffs' house. The plaintiffs did not know that their alarm system was connected to the children's line.

On September 15, 1989, the plaintiffs' house was burglarized. The unauthorized entry activated the audible component of the alarm system. No telephone transmission was received by AA because the automatic dialer was connected to the disconnected children's line. As a result, AA did not notify the East Hartford police of the break-in.

The plaintiffs claim to have lost cash, jewelry and other valuables as a result of the 1989 burglary of their house. Subsequently, the plaintiffs learned of the misconnection of the RJ31X jack. In 1990, the plaintiffs

---

[2] The plaintiffs contend that SNET charged them a monthly maintenance fee for the jack after its installation. This assertion finds no support in the record. It therefore cannot be considered in determining the motion for summary judgment. *Connell* v. *Colwell,* 214 Conn. 242, 251, 571 A.2d 116 (1990).

The plaintiffs submitted copies of records in opposition to the summary judgment motion that list "RJ31X" with no corresponding rate or charge listed. There is no evidence that the plaintiffs ever received a bill that listed the RJ31X jack or that they paid any maintenance fee specifically for the jack.

brought this action alleging, inter alia, injury as a result of SNET's negligent installation and negligent disconnection of the jack.

The trial court rendered summary judgment for SNET, concluding that "the claim for installing the jack to the 'wrong telephone line' is barred by the statute of limitations" and that SNET "had no duty to the plaintiffs [with respect to the disconnection] other than to disconnect the telephone number and service at the plaintiffs' request."

" 'The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact'; (internal quotation marks omitted) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* 219 Conn. 772, 780–81, 595 A.2d 334 (1991); *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); 'it [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists.' *Connell* v. *Colwell,* 214 Conn. 242, 251, 571 A.2d 116 (1990). 'The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment.' *Farrell* v. *Farrell,* 182 Conn. 34, 39, 438 A.2d 415 (1980); *Real Estate Auctions, Inc.* v. *Senie,* 28 Conn. App. 563, 567, 611 A.2d 452 (1992). Moreover, '[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.' (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Car-*

*riage Lane Associates,* supra, 781, quoting *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984)." *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240, 246–47, 618 A.2d 506 (1992); *Pinheiro* v. *Board of Education,* 30 Conn. App. 263, 267–68, 620 A.2d 159 (1993). The dispute between the parties here does not arise out of contested versions of the facts; but see footnote 2, supra; but rather out of the legal significance of the facts. We now consider the issues of the statute of limitations and the existence of a legal duty as applied to the facts of this case.

### SNET's INSTALLATION OF THE JACK

General Statutes § 52-584[3] is the statute of limitations applicable in an action to recover damages for injury to the person or property caused by negligence, reckless or wanton misconduct, or malpractice. That statute imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ." The second provides that in no event shall a plaintiff bring an action "more than three years from the date of the act or omission complained of . . . ." The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs. *McDonald* v. *Haynes Medical Laboratory, Inc.,*

---

[3] "[General Statutes] Sec. 52-584. LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained, of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

192 Conn. 327, 330, 471 A.2d 646 (1984). Consequently, an action may be time barred even if no injury is sustained during the three years following a defendant's act or omission. Id.; see also *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 127 A.2d 814 (1956).[4] It is the application of this statutory time limit that is in dispute in this case.

The plaintiffs claim that SNET was negligent with respect to the installation of the RJ31X jack (1) because the jack was installed to the wrong telephone line, (2) because SNET failed to test the jack it had installed to determine that it was connected to the proper line, and (3) because SNET failed to inform the plaintiffs or the defendant AA that the jack was connected to the wrong line. Each of those specifications of negligence revolves around a single act or omission, namely, the improper installation, which occurred more than three years before the commencement of this action. Consequently, these claims must fail in light of the three year requirement of § 52-584, unless the plaintiffs can successfully toll the running of the statute of limitations.

The plaintiffs argue that the wrong sued upon consists of a continuing course of conduct and therefore the statute of limitations did not begin to run until that

---

[4] We recognize that the effect of the statute of limitations can be harsh under circumstances as in the present case where the statute has run before any injury has occurred. Our statute of limitations, however, has been interpreted to permit such a result for nearly forty years. "It is not the function of this court to alter the will of the legislature merely because the results are unfair. . . . Instead it is our duty to construe the language as used by the legislature. . . . Absent any indication that the General Assembly no longer intends the phrase 'from the date of the act or omission complained of' to be construed in accordance with [the] decision in *Vilcinskas* v. *Sears, Roebuck & Co.*, [144 Conn. 170, 127 A.2d 814 (1956)] . . . the three year limitation of General Statutes . . . [§] 52-584 begins to run from the date of the negligent act." (Citations omitted.) *McDonald* v. *Haynes Medical Laboratory, Inc.*, 192 Conn. 327, 334, 471 A.2d 646 (1984).

course of conduct was completed. "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. In *Bartha* v. *Waterbury House Wrecking Co.,* 190 Conn. 8, 13, 459 A.2d 115 (1983), [our Supreme Court] held that the alleged negligence of a contractor in failing to safeguard a dangerous hole left on the job site after it had completed its work 'would not in itself establish that it had a continuing duty to warn of the danger or to safeguard the hole.' [The *Bartha* court] affirmed the summary judgment granted by the trial court in that case because the plaintiff had presented no facts, by affidavit or otherwise, that would reasonably have supported an inference that the duty to protect against the hazard left upon the premises extended for any substantial period beyond the time of the contractor's departure from the site." *Fichera* v. *Mine Hill Corporation,* 207 Conn. 204, 209, 541 A.2d 472 (1988). "Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the 'act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. See *Giglio* v. *Connecticut Light & Power Co.,* [180 Conn. 230, 242, 429 A.2d 486 (1980)] ('repeated instructions and advice given to the plaintiff by the defendant' concerning a furnace it had previously converted and left in a defective condition); *Giambozi* v. *Peters,* 127 Conn. 380, 385, 16 A.2d 833 (1940) ('[w]hen . . . injurious consequences arise from a course of treatment [by a physician], the statute does not begin to run until the treatment is terminated'); cf. *Handler*

v. *Remington Arms Co.,* [144 Conn. 316, 321, 130 A.2d 793 (1957)] (duty to warn of danger of defective cartridge, 'an inherently dangerous article,' held to continue in existence until time of injury)." *Fichera* v. *Mine Hill Corporation,* supra, 210.

The plaintiffs presented no evidence to the trial court of any later conduct of SNET, wrongful or otherwise, related to the RJ31X jack.[5] SNET had no contact with the jack after its installation.[6] Without any such later conduct, the fact that SNET may have been, or should have been, aware of the danger it created at the time it completed the installation, or some time thereafter, does not establish any duty to warn or to correct the wrongdoing. See *Connell* v. *Colwell,* 214 Conn. 242, 255, 571 A.2d 116 (1990) ("the continuing course of conduct is not the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing"); *Fichera* v. *Mine Hill Corporation,* supra; *Bartha* v. *Waterbury House Wrecking Co.,* supra. Likewise, the plaintiffs' assertion, which lacks any factual support in the record, that SNET had a continuing duty to test the jack's connection will not serve to toll the running of the statute of limitations. *Bartha* v. *Waterbury House Wrecking Co.,* supra.

Finally, the plaintiff argues that SNET had a continuing duty to warn them of the danger caused by SNET's improper installation of the jack. The plaintiffs rely on cases that hold that a continuing duty to warn arises from an inherently dangerous situation or defective product. See, e.g., *Handler* v. *Remington Arms Co.,* supra, 321; *Ferguson* v. *Sturm, Ruger & Co.,* 524 F. Sup. 1042, 1044 (D. Conn. 1981). We first note

[5] The plaintiffs do not claim that a continuing duty exists because of any special relationship between the parties that might give rise to such a continuing duty.

[6] In fact, in 1987, more than three years before the commencement of this action, SNET relinquished its nominal ownership of the jack.

that the amended complaint contains no allegation of an inherently dangerous situation or defective product. Of more significance is that that doctrine is not applicable to the facts of this case. The RJ31X jack in this case, even if negligently installed, did not pose an unreasonable risk of personal injury within the *Handler* doctrine sufficient to give rise to a continuing duty to warn.

Accordingly, the trial court properly rendered summary judgment with respect to the plaintiffs' claims of negligent installation.

SNET's DISCONNECTION OF THE PHONE LINE

The plaintiffs' remaining claims of negligence relate to SNET's disconnection of the children's telephone line to which the RJ31X jack had been installed. In their brief, the plaintiffs claim that a legal duty arose because "a reasonably prudent person could foresee the harm that came to the plaintiffs by virtue of: (a) the disconnection of the portion of the plaintiffs' alarm system that would have notified AA of the burglary; (b) that the plaintiffs were not notified of the same; and (c) that the defendant failed to inspect and monitor the jack at the plaintiffs' home to determine that it was functioning properly." We disagree.

SNET disconnected the children's telephone line at the plaintiffs' request. SNET was required to comply with its customers' instructions. SNET had no duty to second-guess the plaintiffs' request or to advise them of any possible implications of complying with that request. Cf. *D'Esopo & Co.* v. *Bleiler,* 13 Conn. App. 621, 623–24, 538 A.2d 719 (1988) (contractor not responsible for damages resulting from defective plans or specifications supplied by contractee). The fact that the plaintiffs and AA were using the disconnected telephone line for an alarm signal did not impose any duty on SNET. The alarm system was not a service of

SNET. In fact, SNET's only contact with the plaintiffs' alarm system was some eight years earlier. The trial court therefore properly concluded that SNET had no duty to the plaintiffs regarding the disconnection other than to disconnect the telephone number and service at the plaintiffs' request.

Accordingly, the trial court properly rendered summary judgment with respect to the plaintiffs' claims of negligent disconnection.

The judgment is affirmed.

In this opinion the other judges concurred.