[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case, which was commenced by the service of process on February 28, 1994, plaintiff Mignon A. Woolcock has sued defendant Sharon Hospital to recover money damages for certain injuries she claims to have suffered on January 19, 1988, when hospital personnel took an x-ray of her cervical spine. In particular, the plaintiff claims that she was injured when hospital personnel required her to lift and hold certain weighted objects during an x-ray examination on that date. As a result of CT Page 3883 her injuries, the plaintiff claims that she has incurred medical expenses, suffered pain, permanent partial disability, and restrictions on her employment and social life, and lost income.
In the First Count of her Second Revised Complaint ("R.C. II" or "Complaint"), the plaintiff claims that the above-described injuries and losses were caused by the negligence of the defendant hospital in each of eight listed ways. R.C. II, Count I ¶ 8. In the Second Count of the Complaint, the plaintiff claims that the defendant, acting through its agents, servants and employees, "intentionally assaulted and battered [her,] in that said agents, servants and employees placed, or caused to be placed, sand bags and other related X-Ray items on or about . . . [her] person . . . without her consent and over her objections." R.C. II, Count II ¶ 8.
The Third Count of the Plaintiff's Complaint is based on the same factual allegations as the Second Count, though it accuses the defendant of negligent, rather than intentional, assault and battery. R.C. II, Count III ¶ 8. The Fourth Count, which sounds in reckless or wanton misconduct, alleges that the "actions of the defendant, its agents, servants and employees in performing said x-ray examination procedure on the plaintiff without her consent and over her objection and notwithstanding their knowledge of the plaintiff's medical condition and likely results of such procedure was reckless and wanton and caused the plaintiff to suffer injury to the cervical spine with resulting back, neck and radicular pain." R.C. II, Count IV ¶ 8.
Finally, the Fifth Count of the Complaint reiterates the essential factual allegations of the first four counts, then accuses the defendant of intentionally failing and refusing to honor her post-injury requests for all of her medical records, including the report of the x-ray procedure here at issue, and falsely representing to her that there had been no malpractice in her care or treatment. R.C. II, Count V, ¶¶ 1-11. The plaintiff concludes this count with the following claims of wrongdoing and resulting harm:
 12. The Defendant's refusal to provide the Plaintiff with her complete medical records was intentional and the representations that there was no "malpractice" was false and the Defendant, its agents, servants or employees knew or should have known them to be false and CT Page 3884 they were made by the Defendant to induce the Plaintiff not to pursue a claim for medical malpractice and to hinder her if she chose to do so.
 13. Relying on these acts and representations the Plaintiff did not then pursue her claim for medical malpractice to her loss and detriment.
The defendant answered the Complaint by denying all of the plaintiff's allegations of negligence, intentional and negligent assault and battery, reckless or wanton misconduct, and fraudulent misrepresentation. See generally, Answer to Second Revised Complaint, dated February 21, 1996. In addition, it interposed special defenses to all counts of the Complaint under General Statutes § 52-584, the statute of limitations for actions sounding in negligence, medical malpractice and reckless or wanton misconduct, and General Statutes § 52-577, the general statute of limitations for all other actions founded upon a tort. The plaintiff later denied both special defenses without specially pleaded in avoidance of either. Reply to Special Defenses, dated March 1, 1996.
On or about February 14, 1997, the defendant moved this Court under Section 378 of the Connecticut Practice Book for the entry of a summary judgment in its favor on all counts of the Complaint. As grounds for its motion, the defendant asserts that it is entitled to judgment as a matter of law because none of the plaintiff's claims was brought against it within the limitations period prescribed by law. The defendant initially supported its motion with a detailed memorandum of law and several attached exhibits.[1]
The plaintiff initially filed no papers in opposition to the defendant's motion. With the Court's permission, however, she later prepared and filed a written Objection to Motion for Summary Judgment, supported by a personal affidavit and several exhibits of her own.[2] The defendant responded to this belated submission with an additional memorandum of law.
 I
"Summary judgment is a method of resolving litigation when the pleadings, affidavits, and any other proof submitted show CT Page 3885 that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." (Citations omitted.) Wilson v. New Haven, 213 Conn. 277, 279
(1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citations omitted.) Connecticut Bank TrustCo. v. Carriage Lane Associates, 219 Conn. 772, 781 (1991).
The "party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . ." (Citation omitted.) Id. However, once the movant makes an initial showing in support of its claim, it is "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. (Citation omitted.) Wadia Enterprises, Inc.v. Hirschfield, 224 Conn. 240, 247 (1992). "Summary judgment may be granted where it is clear that a claim is barred by a statute of limitations." Woodside Green Condominium Association, Inc. v.Woodside Green, Inc., 9 Conn. L.Rptr. 637 (October 4, 1993, Lewis, J.), citing Mac's Car City, Inc. v. American NationalBank, 205 Conn. 255, 259-60 (1987).
 II
The First, Third and Fourth Counts of the Complaint, sounding respectively in negligence (medical malpractice), negligent assault and battery, and reckless or wanton misconduct, are governed by the filing requirements set forth in General Statutes § 52-584. Section 52-584 provides in relevant part as follows:
 No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct, or by malpractice of a hospital . . ., shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of [.]
So worded, Section 52-584 establishes two related deadlines for the bringing of negligence, malpractice or recklessness actions. The first is a two-year period of limitations, running from the time when plaintiff's "injury is first sustained or CT Page 3886 discovered or in the exercise of reasonable care should have been discovered," id., until the date the action is served upon the defendant. McGaffin v. Roberts, 193 Conn. 393, 401 n. 9 (1984) (holding that an action is "brought," within the meaning of the statute of limitations, "on the date of service of the writ upon the defendant."). The second is a three-year period of limitations, running from the "date of the act or omission complained of," General Statutes § 52-584, until the date on which the action is served. To comply with the statute's requirements, a plaintiff must bring her action before either of these periods expires.
A plaintiff "first sustain[s]" an injury, within the meaning of the statute of limitations, when she first "suffers some form of actionable harm." Burns v. Hartford Hospital, 192 Conn. 452,460 (1984). Under this test, the two-year limitations period established by the statute can obviously begin to run long before the plaintiff experiences the fullest manifestation or the most aggravated consequences of her injury.
By the same token, a plaintiff "first . . . discover[s]" that she has been injured when she first becomes aware that she has suffered "some form of actionable harm." Under this test as well, the two-year limitations period set forth in the statute can obviously start to run long before the plaintiff discovers the fullest manifestation or the most aggravated consequences of her injury. Merly v. State, 211 Conn. 199, 206 (1989). Instead, the two-year filing period starts to run when the plaintiff first realizes that the defendant, by his conduct, has committed "all the essential elements of a cause of action." Lambert v. Stovell,205 Conn. 299, 206 (1989).
Even, however, if a plaintiff files her negligence or recklessness action within two years of "first . . . discover[ing]" that she has suffered some form of actionable injury, that action can be defeated under Section 52-584 if she does not bring it within "three years from the date of the act or omission complained of[.]" Id. That date, simply stated, is the date of the defendant's negligent or reckless conduct, not the potentially much later date on which such negligent or reckless conduct finally produces injury. Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 175 (1956); Blanchette v. Barnett,229 Conn. 256, 265 (1994). It has thus been held that even when a defendant's negligent or reckless conduct produces no actionable injury during the three-year period following its commission, a CT Page 3887 plaintiff's later-filed negligence or recklessness action may be time-barred for failure to satisfy the three-year filing requirement of Section 52-584. Nardi v. AA Electronic Sec.Engineering, Inc., 32 Conn. App. 205, 211 (1993).
Applying these rules to the facts here presented, it is clear beyond question that the negligence and recklessness counts of the instant lawsuit are barred under Section 52-584. To begin with, the plaintiff first sustained and discovered that she had suffered some form of actionable harm on the very day as the negligent or reckless conduct here complained of, to wit: January 19, 1988. The defendant's challenged conduct, to reiterate, involves the manner in which its agents, servants or employees conducted the x-ray examination of the plaintiff on that date. Specifically, the plaintiff accuses the defendant of negligence and recklessness in its ordering of the plaintiff to lift and hold heavy objects during the course of that examination. She also accuses the defendant of negligence in its pre-examination failure to adequately train, supervise and monitor the performances of its agents, servants and employees so as to avoid the use of such harmful methods for the examination of patients. Plainly, all of the conduct challenged in the plaintiff's negligence and recklessness counts was fully performed on or before January 19, 1988. Therefore, the three-year limitations period prescribed by Section 52-584 began to run on that date. As a result, this action became untimely when it was not brought by the service of process on or before January 19, 1991. Since the action was not brought until February 28, 1994, the defendant's motion for summary judgment as to the negligence and recklessness counts of the action must be granted.
An alternative reason for granting the defendant's summary judgment motion as to the First, Third and Fourth Counts of the Complaint is that this action was not brought within two years from the date when the plaintiff's injury was first sustained or discovered. On this record, the plaintiff first sustained and discovered her injury on the date of the x-ray examination itself. She not only claims to have then realized the fact that she had been injured, but the further fact that that injury was caused by the malpractice of the defendant. According to the plaintiff, she warned hospital personnel prior to the x-ray examination that in view of her physical condition, she should not be required to lift and hold heavy objects. Upon complying with the hospital's insistence that she do so despite her concerns, she immediately felt great pain, screamed, and CT Page 3888 dropped the sand bags, realizing at once that she had been injured due to the improper instructions of hospital personnel. Thus in paragraph 8 of the Fifth Count of her Complaint, the plaintiff admits that, "On or about January 19, 1988, and on numerous occasions thereafter, the Plaintiff orally complained of medical negligence in her care and treatment . . . ." R.C. II, Count V ¶ 8. Plainly, on the basis of this binding admission alone, the Court must conclude that as of January 19, 1988, the plaintiff had both sustained and discovered that she had suffered "some form of actionable harm."
Within one year of sustaining her injuries, moreover, the plaintiff concedes, in her sworn deposition testimony, that she had begun to consider hiring a lawyer to press her legal claim against the hospital. Consistent with her intention to take this course of action, the plaintiff later complained in writing to the hospital's president, James E. Sok, proclaiming that she had been a "victim of alleged malpractice acts" at the hands of the hospital. This letter, written on January 10, 1990, clearly demonstrates the plaintiff's awareness, before the two-year limitations period dating from the date she first sustained her injuries expired, that she had a viable malpractice action against the defendant hospital.
In response to the plaintiff's January 10, 1990 letter, the hospital's risk manager, Joan McCue, responded with a letter on February 15, 1990 in which she stated, inter alia, that "there was no malpractice" in the plaintiff's care and treatment. Undaunted by this response, the plaintiff admittedly continued to write and speak with hospital personnel for the next four years, always stating with conviction that she had been injured on January 19, 1988 due to the malpractice of hospital personnel. R.C., Count V ¶ 8.
Against this background, the Court must conclude that this action, which was not served upon the defendant hospital until February 28, 1994, was "brought" long after the limitations period prescribed by Section 52-584 had expired. Because the plaintiff first sustained and discovered her injury on the very day it was inflicted, this action should have been brought not later than two years thereafter, on or before January 19, 1990. Plainly, it was not. Even, however, if she cannot be deemed to have "discovered" the injury until January 10, 1990, when she first wrote to the defendant's president complaining of "alleged malpractice acts," this case should have been brought not later CT Page 3889 than two years after that date or three years after the date of the act or omission complained of, whichever came first. Because this case was brought more than two years after the plaintiff discovered her injury and "more than three years from the date of the act or omission complained of," its prosecution is plainly barred under Section 52-584.
The only possible bases suggested in the parties' submissions for denying the defendant's motion for summary judgment as to the First, Third and Fourth Counts of the Complaint are as follows: first, that prior to filing any action against the defendant, the plaintiff was unable to obtain all of her treatment records from the defendant hospital, including the report concerning the x-ray examination in which she claims that she was injured; and, second, that prior to filing this action in the Hartford Superior Court, from which it was later transferred to this Court, the plaintiff obtained a 90-day automatic extension of the statute of limitations under General Statutes § 52-190a to enable her to make a reasonable inquiry to determine if there were grounds for a good-faith belief that there has been negligence in her care or treatment. For the following reasons, neither of these occurrences affects the defendant's right to summary judgment.
First, as previously described in detail, there is no evidence whatsoever that the defendant's alleged failure to produce all the plaintiff's treatment records caused her not to realize that she had suffered "some form of actionable harm." The lack of such records neither did nor could have delayed the plaintiff from discovering her injury. Even, moreover, if the hospital's failure to produce the plaintiff's medical records might somehow have prevented her from realizing that she had suffered "some form of actionable harm," the plaintiff has not specially pleaded that that occurred, as required by General Statutes § 52-595, or offered evidence that it did occur despite her failure to plead it. To the contrary, the evidence here presented clearly shows that any failure by the hospital to disclose the plaintiff's medical records did not conceal her cause of action from her, and thus did not toll the statute of limitations on her negligence or recklessness claims.[3]
As for the plaintiff's procurement of an automatic 90-day extension of the statute of limitations under General Statutes § 52-190a(b), which was granted by a clerk in Hartford on December 7, 1993, the granting of that extension cannot save the plaintiff's negligence claims for the following reason: The CT Page 3890 plaintiff's petition for the extension in question was not itself filed until more than five years after the acts or omissions here complained of and the sustaining and discovery of the injuries caused thereby. Hence, the clerk had no power to grant the requested extension to February 28, 1994, the date on which the plaintiff "brought" her case. Instead, the most he could have done was to add 90 days to the maximum three-year period within which all medical malpractice claims must be brought. If, then, the plaintiff had filed a timely request for an automatic extension before the three-year limitations period prescribed by the statute expired on January 19, 1991, the clerk could only have extended that period to April 19, 1991.
For the foregoing reasons, the defendant's motion for summary judgment is hereby granted as to the First, Third and Fourth Counts of the Second Revised Complaint.
 III
The Second and Fifth Counts of the plaintiff's Complaint, sounding respectively in intentional assault and battery and fraudulent misrepresentation, are governed by the filing requirements set forth in General Statutes § 52-577. Section 52-577 provides that, "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." So worded, this statute prescribes a maximum period for the bringing of a tort claim which is identical to the maximum period for the bringing of any negligence claim, as established by General Statutes § 52-584
and described in part II of this Memorandum, supra.
The Second Count of the Complaint is based on conduct which the Plaintiff claims to have occurred on January 19, 1988. The claim of intentional assault and battery therein presented is therefore barred by the statute of limitations, for this case, which was commenced on February 28, 1994, was clearly not brought "within three years of the act or omission complained of," as required by Section 52-577.
As for the Fifth Count of the Complaint, alleging fraudulent misrepresentation by the defendant which assertedly caused the plaintiff not to "pursue her claim for medical malpractice to her loss and detriment," R.C. II, Count V ¶ 13, all but one of the defendant's alleged acts or omissions are claimed to have occurred on or before February 15, 1990. The only later act or CT Page 3891 omission which is claimed to occurred less than three years before the commencement of this action is described as follows in paragraph 11 of the Fifth Count of the Complaint:
 11. On or about July, 1993, the Defendant, Sharon Hospital, its agents, servants or employees after being requested to provide . . . [the Hospital's] medical records [concerning the Plaintiff] to the Plaintiff's treating physician provided some records but failed to include the report of the X-Ray procedure conducted January 19, 1988.
If the documents and materials before the Court tended to show both that such a request was made but not honored and that the defendant's failure to honor it prevented the plaintiff from discovering the existence of a cause of action for medical malpractice, the Court would surely deny the defendant's summary judgment motion. In that event, there would obviously be a genuine issue of material fact as to whether, despite the lateness of the plaintiff's commencement of this action, the action could be saved under General Statutes § 52-595.
Here, however, the facts presented raise no such genuine factual issue, for even though the plaintiff has presented a letter from her treating physician in New York, Dr. Ronald F. Green, which notes that the radiology report in question was never transmitted to him, despite his request, by Sharon Hospital, the letter in no way suggests that that omission compromised his ability to assess the viability of the plaintiff's malpractice claim. Thus, though Dr. Green flatly states that the plaintiff's medical records from the defendant hospital are incomplete because they do not contain a report of the challenged x-ray procedure, he has no trouble stating medical findings which clearly implicate the hospital as the party legally responsible for the plaintiff's injuries:
 Miss Mignon Woolcock sustained injuries to the cervical spine in 1957 resulting in pain in the neck and upper back. She subsequently received physical therapy from various practitioners in order to relieve the symptoms of the above injury.
In 1988 while receiving treatment from CT Page 3892 physicians associated with Sharon Hospital, she was required to undergo an x-ray examination of the neck. During the course of this examination, Miss Woolcock over her objections was asked to lift heavy sand bags, this produced a severe exacerbation of the neck and upper back pain as well as numbness of the upper extremities. When this was brought to the attention of the Radiology Technician, the test was continued in spite of the objections of Miss Woolcock. Following this procedure, her symptoms became worse.
 At the present time Miss Woolcock continues to have neck and upper back pain and limited range of motion of the cervical spine. Her condition is confirmed by abnormal x-rays and abnormal MRI scan of the neck. It is essential that Miss Woolcock continue to have physical therapy. In my opinion Miss Woolcock has a permanent disability. This means she will continue to have neck and upper back pain for the indefinite future.
Letter from Dr. Ronald F. Green dated July 20, 1993. This letter, moreover, was the second letter from Dr. Green assessing the nature, extent and origins of the plaintiff's complained-of injuries. An earlier letter, dated December 13, 1991, thus offered the following, unequivocal assessment of the plaintiff's case without the benefit of, and obviously without need for, the undisclosed x-ray report:
 Mignon Woolcock is under my care for neck and upper back pain together with episodes of dizziness and vertigo, exacerbated when in 1988 she was required to hold heavy sandbags in the Sharon Hospital for the purpose of cervical x-rays requested by Dr. Moscowitz.
 On examination, deep tendon reflexes are equal and symmetrical. There is no focal motor weakness. There is limitation of motion of the cervical spine, back pain, and spasm of the paracervical and upper back muscles. An MRI scan performed December 9, 1991 indicated CT Page 3893 constriction of the neural canal from C4 to T1 caused by osteophyte formation.
 Impression: cervical radiculitis. The patient should have physical therapy consisting of ultrasound, moist heat, and manual cervical traction.
 Prognosis: the patient has a permanent disability.
12/31/91 Letter from Dr. Green, p. 1 (Emphasis supplied.)
From the foregoing letters, it is apparent that the hospital's alleged failure to disclose the report of the January 19, 1988 x-ray procedure did not prevent Dr. Green from fully evaluating the plaintiff's claim and confirming her long-held belief that she had a valid cause of action against the hospital. Absent any other evidence tending to show that the defendant's failure to disclose the x-ray report had any impact on the plaintiff's consistent perception that she had a valid malpractice claim, the plaintiff has no factual basis for claiming that the defendant engaged in any fraudulent misrepresentation less than three years before the bringing of this action. Therefore, the defendant is entitled to summary judgment on the Fifth Count of the plaintiff's Complaint.
For the foregoing reasons, the defendant's Motion for Summary Judgment is hereby granted as to each count of the Second Revised Complaint. It is so ordered this 10th day of April, 1997.
HON. MICHAEL R. SHELDON, J.