[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT OF THE DEFENDANT CITY OF MILFORD AND FORMER BUILDING INSPECTOR NUGENT
Before the Court are Summary Judgment motions of the defendant City of Milford and former Building Inspector Nugent. CT Page 8965 Because the court finds there is no material issue of fact and that the applicable Statute of Limitations bars the lawsuit against both defendants, their Summary Judgment Motion is granted.
The plaintiff filed a multi count complaint against various defendants including the City of Milford and Daniel Nugent, its Building Inspector. The plaintiff alleges that she entered into an agreement with defendant Vetro in which Vetro was to build an addition to the plaintiff's home. According to the complaint, Vetro began work on the project in the spring of 1983. In May of 1983, Daniel Nugent, then a building inspector for the City of Milford completed a field inspection during which he approved the footings for the project.
Though a certificate of occupancy was issued in 1986, the plaintiff alleges that there were continuous problems with the addition and that Vetro was constantly performing repairs on the addition. When asked what was causing the problems, the plaintiff alleges that Vetro remained closemouthed and never revealed that the addition lacked proper footings and was built on top of a pile of fallen trees and stumps. According to the complaint, Vetro hid the actual problems from the plaintiff until August, 1996, when the plaintiff independently learned about the faulty footings. The complaint further alleges that Nugent and the City of Milford were negligent in approving the allegedly faulty footings.
The defendants filed answers and alleged special defenses. The defendants then filed the motions for summary judgment that are presently before the court. On May 6, 1999, the plaintiff filed her objection to Vetro's motion for summary judgment. Then, on May 10, 1999, the day of argument, the plaintiff filed a request for leave to amend to add additional counts.[1]
Simultaneously, the plaintiff filed her objection to Milford's motion for summary judgment. Milford has filed an objection to the request for leave to amend the complaint and argues that the amendments are untimely.
"The grant or denial of a motion to amend the pleadings is a matter within the discretion of the trial court. Moore v. Sergi,38 Conn. App. 829, 836, 664 A.2d 795 (1995). In granting or denying an amendment "[t]he essential tests are whether the ruling of the court will work an injustice to either [party] and whether the granting of the motion will unduly delay a CT Page 8966 trial. . . . In the final analysis, the court will allow an amendment unless it will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues, or if there has been negligence or laches attaching to the offering party." Id.
"While a trial court may be well-advised to exercise leniency when amendments are proffered in response to a motion for summary judgment, rather than on the eve of trial, [the Supreme Court has] affirmed as discretionary the denial of permission to amend under such circumstances. . . ." Conference Center Ltd. v. TRC,189 Conn. 212, 216, 455 A.2d 857.
In the present case, the plaintiff has not presented a sound reason why the court should grant the motion to amend. The plaintiff certified the pleadings closed on June 3, 1998, and the defendants filed their motions for summary judgment on February 22, 1999 and March 8, 1999. In spite of this, the plaintiff waited until the very last possible moment, the morning scheduled for argument, to file amendments to a complaint originally filed in July of 1997. The court, therefore, will sustain the defendant Milford's objection to the motion to amend. See TeachersInsurance v. Broad Hanrahan, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 132304 (September 8, 1994, Hickey, J.). There comes a time when every plaintiff must choose the ground on which to stand. There comes a time when it is fundamentally unfair to a defendant to defend an endless panoply of shifting and differing legal theories pled against it.
Milford has moved for summary judgment on the grounds that: 1) the plaintiff's action is barred by the statute of limitations contained in General Statutes § 52-584; 2) the doctrine of governmental immunity codified in § 52-557n bars the plaintiff's claim; and 3) the plaintiff has not alleged a viable indemnification claim pursuant to General Statutes §§ 7-101a or7-465. The plaintiff objects to the motion for summary judgment on the ground that there are genuine issues of material fact and that the Milford defendants are not entitled to judgment as a matter of law.
For the reasons set forth below, the court finds that the plaintiff's action is barred by the statute of limitations. Milford's motion for summary judgment, therefore, is granted.
According to the complaint, Milford approved the footings for CT Page 8967 the addition to the plaintiff's home on May 6, 1983. Furthermore, Milford issued a certificate of occupancy for the addition in 1986.
The complaint alleges that Milford was negligent in doing so and that this negligence was a direct and proximate cause of the plaintiff's injuries.
Since the ninth and tenth counts sound in negligence, the appropriate statute of limitations is contained in General Statutes § 52-584. See Nardi v. AA Electrical SecurityEngineering, Inc., 32 Conn. App. 205, 210, 628 A.2d 991 (1993). See also Farms Country Club v. Knickerbocker-Barry, Superior Court, judicial district of New Haven at New Haven, Docket No. 372119 (February 10, 1997, Zoarski, J.); Conrad v. Erickson, Superior Court, judicial district of Middlesex at Middletown, Docket No. 069587 (January 13, 1994, Walsh, J.), affirmed,41 Conn. App. 243, 675 A.2d 906 (1996).
Section 52-584 "imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered. . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of. . . ." (Citations omitted; internal quotation marks omitted.) Nardi v.AA Electronic Security Engineering, Inc., supra,32 Conn. App. 210.
With respect to the first time limitation in § 52-584, the two-year statute of limitations accrues when a party suffers an actionable harm, i.e. when the "plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509,521, 562 A.2d 1110 (1989). "[T]he statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof." Lambert v. Stovell, 205 Conn. 1, 6,529 A.2d 710 (1987).
The three year time limit accrues "when the negligent conduct of the defendant occurs and is not the date when the plaintiff first sustains damage." McDonald v. Haynes Medical Laboratory,Inc., 192 Conn. 327, 330, 471 A.2d 646 (1984). "Consequently, an CT Page 8968 action may be time barred even if no injury is sustained during the three years following a defendant's act or omission." Nardiv. AA Electronic Security Engineering, Inc., supra,32 Conn. App. 210-11. See also McDonald v. Haynes Medical Laboratory, Inc., supra, 192 Conn. 330 (acknowledging "the anomalous possibility that the statutory time limit for bringing suit could expire before any injury was sustained"). As such, the three-year time limit is a statute of repose because it specifies the time limit beyond which an action under § 52-584 is absolutely barred.Rivera v. Fairbank Management Properties, Inc.,45 Conn. Sup. 154, 158, 703 A.2d 808 (1997).
In the present case, it is immaterial whether the action accrued in 1983, the date of the building inspection, or 1986, when the city issued the certificate of occupancy. Under either scenario, the negligence action, which was brought against Milford in 1997, would have been untimely and barred by the statute of limitations. The plaintiff, however, argues that the defendant engaged in a continuing course of conduct which tolled the statute of limitations from running. Furthermore, the plaintiff argues that whether the alleged continuing conduct did toll the statute of limitations is a question for the trier of fact and raises genuine issues of material fact inappropriate for summary judgment.
Under proper circumstances, the statute of limitation "may be tolled under . . . the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." Blanchette v. Barrett, 229 Conn. 256, 265,640 A.2d 74 (1994).
However, "[i]n order [t]o support a finding of a `continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such wrong. . . . Where [the Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the `act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty [or an inherently dangerous product] or some later wrongful conduct of a defendant related to a prior act." (Internal quotation marks omitted.) Id., 275. "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, CT Page 8969 lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Id., 276. "For example, the doctrine is generally applicable under circumstances where `[i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury' or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run. . . .'" Sanborn v. Greenwald,39 Conn. App. 306, 295-96, 664 A.2d 803, cert. denied, 235 Conn. 925,666 A.2d 1186 (1995), quoting Blanchette v. Barrett, supra,229 Conn. 277.
The plaintiffs do not allege in their complaint or in their objection to the defendant's motion for summary judgment that there existed a "special relationship" between themselves and either defendant to implicate the first type of continuous course of conduct recognized by the courts. Indeed, although "[w]hat is meant by the special relationship' required by this principle is not clear . . . it does mean something more than evidence of either a terminated . . . or on-going relationship." Rivera v.Fairbank Management Properties Inc., supra, 45 Conn. Sup. 159. At least one Superior Court case has analyzed the question of the existence of a "special relationship" for purposes of the continuing course of conduct doctrine in terms of whether a fiduciary or confidential relationship existed between the parties. Van Deusen v. Dratch, Superior Court, judicial district of Litchfield, Docket No. 068758 (May 7, 1996, Pickett, J.). "`A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him.'" Id., quoting Dunham v. Dunham, 204 Conn. 303, 322, 528 A.2d 1123
(1987). In the present case, there is no allegation by the plaintiff that any special relationship existed between herself and Milford or Nugent, nor does the evidence as construed in a light most favorable to the plaintiff reveal such a relationship.
Therefore, the court will turn to the next possible basis for the defendant's continuing course of conduct argument, namely that the defendant engaged in some subsequent wrongful conduct related to the prior act of the improper inspection of the footings for the addition to the plaintiff's home. See BlanchetteCT Page 8970v. Barrett, supra, 229 Conn. 275.
Counts nine and ten of the plaintiff's complaint fail to allege any further actions on the part of Milford that would toll the statute of limitations. In the plaintiff's objection to the motion for summary judgment, however, there is an allegation that there was a continuing course of conduct on the part of Milford in that "[i]n 1994, building inspector Roger Marino inspected the premises to determine why it was pulling away from the main structure. He took measurements and concluded that the addition was sloping downward. When he inspected the structure, he knew that there was something terribly wrong, and instead of investigating further, he referred the plaintiff [to a contractor used by the city]." (Plaintiff's memorandum of law in support of the objection to the defendant's motion for summary judgment, dated May 7, 1999, p. 10.)
Before going any further the court will note that if these allegations do consist of a continuing course of duty, they do so only against the City of Milford and not against the original inspector Nugent, who has attested to the fact that he was on the plaintiff's premises only once, has long since left the payroll and thus could not have acted in such a way as to establish a continuing course of conduct.
Cases addressing the course of continuing conduct issue have noted that, in general, the defendant has no continuing duty from the time of negligence to the time of injury to either correct the problem or warn the plaintiff as to the prior negligence unless he knew about the defect or later actually learned about it. Graetz v. Brito, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 052517 (March 2, 1998, Flynn, J.), citing Blanchette v. Barrett, supra, 229 Conn. 284
(holding that a physician who has misdiagnosed a patient has no "continuing duty to correct that diagnosis in the absence of proof that he subsequently, learned that his diagnosis was incorrect); Connell v. Colwell, 214 Conn. 242, 255, 571 A.2d 116
(1990) ("the continuing course of conduct is not the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing . . . it consists, rather of `either a special relationship between the parties giving rise to such continuing duty or some later wrongful conduct of a defendant related to the prior act'"); Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 13, 459 A.2d 115 (1983) (affirming summary judgment granted by trial court and holding that alleged negligence of contractor in CT Page 8971 failing to safeguard a hole left on job site after completion of work "would not in itself establish that it had a continuing duty to warn of the danger or to safeguard the hole"); Sanborn v.Greenwald, supra, 39 Conn. App. 297 (holding that the defendant attorney "had no continuing duty to notify the plaintiff of an alleged mistake in the stipulation [to modify dissolution of marriage judgment] in the absence of proof that he subsequently learned that his drafting was negligent"). In the present case, neither of these criteria is present and, therefore, there is no continuing course of conduct. As to whether the defendant knew "about the original negligent act, there is evidence that a mistake may have been made in inspection by Nugent but not that he or the City of Milford so later learned that the original inspection was negligent. Indeed, even construed in a manner most favorable to the plaintiff, neither the allegations contained in counts nine or ten, nor the evidence offered in opposition to the motion for summary judgment, suggests that the defendant was aware of the problems with the addition's footings. Furthermore, there is no evidence that the defendant City later learned that the inadequate footings were causing the problems to the addition. Even if the plaintiff's allegation that a subsequent city inspector inspected the addition and was alarmed by its condition was true[2], the plaintiff has not actually alleged that the subsequent inspector discovered that the footings were improper. Rather, it appears that any subsequent inspection was independent and different in scope than the one allegedly conducted in a negligent fashion by Mr. Nugent. The subsequent conduct of Milford does not relate back to the alleged negligent inspection of the footings some eleven years prior this subsequent inspection to have the effect the plaintiff desires of freeing her from the Statute of Limitations.
Since, the plaintiff's complaint and evidence fails to support a continuing course of conduct, the statute of limitations is not tolled either to the date of the last inspection performed by Milford or to the time of the plaintiff's injury. The defendants Daniel Nugent and the City of Milford's motion for summary judgment, accordingly, is granted. Since the court finds the action barred by the statute of limitations/statute of repose contained in § 52-584, there is no need to address the defendants' alternative grounds for summary judgment.
Summary Judgment is entered on the plaintiff's complaint in favor of the defendants City of Milford and Nugent. CT Page 8972
FLYNN, J.