[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION FOR SUMMARY JUDGMENT
Plaintiff Thomas Danaher has filed a Revised Complaint which asserts a claim for professional malpractice against Dr. Ashok Parekh who is a psychiatrist, and Elmcrest Manor Psychiatric Institute, the institution with which he was associated at all times material. Plaintiff Thomas Danaher's claim is predicated upon his contention that the defendants misdiagnosed and mistreated his mental condition. The defendants deny the claims of misdiagnosis and mistreatment. Moreover, the defendants take the position that this cause of action is barred by the statute of limitations applicable to such claims.
The defendants have filed a Motion for Summary Judgment based upon the statute of limitations. Among the items accompanying the motion are excerpts from the plaintiff's deposition as well as parts of the plaintiff's application for social security benefits and a memorandum of law. The plaintiff has filed memoranda in opposition to the defendant's motion for summary judgment also accompanied by excerpts from his deposition.
Pursuant to Connecticut Practice Book Section 17-44 the court should enter summary" judgment ". . . if the pleadings, affidavits and any other proof submitted show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The Appellate Court has reviewed the respective parties' burdens and the standard which the trial court should apply when deciding a motion for summary judgment.
 Although the burden of showing the nonexistence of any material fact is on the party seeking summary judgment, "the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . ." (Internal quotation marks omitted.) Danziger v. Shaknaitis, supra; Nardi v. AA Electronic Security Engineering, Inc., 32 Conn. App. 205, 209, 628 A.2d 991 (1993); Cortes v. Cotton, 31 Conn. App. 569, 572-73, CT Page 5792 626 A.2d 1306 (1993). In deciding motions for summary judgment, the trial court is obligated to construe the evidence in the light most favorable to the nonmoving party. Scrapchansky v. Plainfield, supra; Nardi v. AA Electronic Security Engineering, Inc., supra. The test to be applied is whether a party would be entitled to a directed verdict on the same facts.
 Gabrielle v. Hospital of St. Raphael, 33 Conn. App. 378, 383 (1994)
From the pleadings, and the proof submitted in connection with the motion for summary judgment the court finds the facts set out in the discussion that follows.
Plaintiff Thomas Danaher was treated on an out-patient basis at Elmerest Manor Psychiatric Hospital (Elmcrest) on various occasions from 1993 until May of 1994. Plaintiff's treating psychiatrist at Elmcrest was Dr. Ashok Parekh who informed him that he had symptoms similar to patients with schizophrenia, The plaintiff specifically remembers that Dr. Parekh did not diagnose him as having schizophrenia. Dr. Parekh had the opinion that the plaintiff had a thought disorder. In January of 1994 Dr. Parekh prescribed the drugs Navane and Cogentin for him to take. Although Russell Harrington, a therapist at Elmcrest, also treated the plaintiff, he functioned under Dr. Parekh's supervision.
As to Dr. Ashok Parekh's diagnosis and treatment plan, plaintiff Thomas Danaher stated the following in his deposition testimony:
I thought it was bogus the moment I heard it.
 However, I took the medication for a little while and gave it a shot.
 (Plaintiff's deposition of June 29, 1999, page 152, emphasis added).
The plaintiff reported to the emergency room of the Veterans Administration Hospital in January of 1994 complaining of a negative reactions to these drugs, and discontinued taking them.
Plaintiff's last treatment by the defendants was on or about May 19, 1994. The plaintiff stated in his deposition testimony why he stopped treating at Elmcrest.:
 Q. Why did you leave Elmcrest? CT Page 5793
 A. I — to my recollection, I believe it was because I think they were treating me for the wrong thing.
(Plaintiff's deposition, page 150)
In the early Fall of 1994 — after he terminated his treatment with Elmerest — the plaintiff began treatment with Dr. Henri Schapira, a psychiatrist, whom he saw for approximately three months. (Plaintiff's deposition, page 41). In his deposition testimony the plaintiff stated that Dr. Schapira diagnose him as having depression — not having any type of psychosis — and that Dr. Schapira further told him that Dr. Parekh or the other providers at Elmcrest had misdiagnosed his condition. (Plaintiff's deposition, pages 156, 157, 158). In responding to the question of when Dr. Schapira told him of the misdiagnosis, the plaintiff stated that he believes that it was in the early in his treatment by Dr. Schapira. (Plaintiff's deposition, page 157).
After three months the plaintiff stopped treating with Dr. Schapira and shortly thereafter began treatment with a Dr. Levis. Dr. Levis was critical of the diagnosis which the plaintiff received from Elmcrest, and he diagnosed the plaintiff as suffering from depression and attention deficit disorder. (Plaintiff's deposition, pages 157, and 158)
This action was commenced against Elmerest on April 18, 1997, and against Dr. Ashok Parekh on April 22, 1997. The plaintiff claims that it was only upon being informed by Dr. Levis ". . . that he was suffering from attention deficit disorder, and not the "Psychotic Disorder and Possible Schizoaffective Disorder or Schizophrenia' that the statute of limitations would start to run on [his] claims of malpractice." (Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment, 4th page). The plaintiff has not provided the date on which he received this diagnosis from Dr. Levis. However the plaintiff did state that Dr. Levis gave him the diagnoses early on in his treatment. (Plaintiff's deposition, pages 157 — 158)
From plaintiff's deposition testimony it is clear that he treated last with the defendants no later than May of 1994; that he treated with Dr. Henri Schapira starting in the Fall of 1994 for a three month period and that he was informed by Dr. Schapira at least in September but no later than the first part of December of 1994 (a liberal expanse of the three months during which he said he treated with Dr. Schapira) of his opinion that Dr. Parekh and Elmcrest had misdiagnosed and mistreated his mental health condition. CT Page 5794
In their motion for summary judgment the defendants maintain that the plaintiff certainly is chargeable with active knowledge of his malpractice claim as of January of 1994, for it was then that he reported to and was treated at the Veterans hospital for what allegedly was a negative reaction to the medication prescribed by Dr. Parekh. The defendants point out that January of 1994 is more than three years from the April 1997 filing of this lawsuit.
The defendants further claim since the plaintiffs last treated with Dr. Ashok Parekh and Elmcrest in May of 1994 — a period more than two years prior to the filing of this lawsuit. In addition the defendants assert that the plaintiff received Dr. Henri Schapira's statement of the alleged misdiagnosis by the defendants no later than December of 1994 — a time more than two years prior to the filing of this lawsuit.
The defendants maintain that this action is barred by the applicable statute of limitations governing medical malpractice as alleged in this case. The court shall now examine the statute in the light of the facts presented.
Connecticut General Statutes Section 52-584 sets out the time within which a cause of action premised upon medical malpractice must be brought. This statute states that
 [n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed.
In Burns v. Hartford Hospital, 192 Conn. 451 (1984), the Supreme Court ruled that the statute requires the injured party to bring an action within two years of discovering the alleged injury. "In this context an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run." Id. at 459.
This court finds that there is no genuine issue of material fact as to CT Page 5795 whether the plaintiff believed early on that the defendants' misdiagnosed his mental condition. He admits the same in his deposition by stating he ". . . knew it was bogus from the start." (Plaintiff's deposition, supra) Nevertheless, he took the medication for a while ". . . to give it a shot." Id The court finds that it was in January of 1994 that he reported a negative reaction to the medication and received treatment at the Veterans hospital at that time. Thus, clearly, any medical malpractice claim resulting from improper prescription is well beyond even the three-year provision of Conn. Gen. Stat. Sec. 52-584, inasmuch as the filing of this lawsuit in April of 1997 is at a time more than three years after the plaintiff's reaction to the medication.
It is clear from the facts of this case that plaintiff Thomas Danaher formed his own opinion in May of 1994 that the defendants' were "treating him for the wrong thing, "(plaintiff's deposition, supra), and for that reason then terminated his treatment with the defendants. It is further clear from the plaintiff's testimony that Dr. Henri Schapira informed the plaintiff as to a misdiagnosis and mistreatment by the defendants no later than December of 1994. Each time frame of May 1994 and December of 1994 is more than the two year period of limitation set out in Conn. Gen. Stat. Sec. 52-584 for commencement of a cause of action in medical malpractice. See Lambert v. Stovell, 205 Conn. 1, 6 (1987).
This court finds further that there is no genuine issue of material fact as to whether the plaintiff's belief of improper diagnosis and treatment prior to and at the time of the May 1994 separation from the defendants' treatment, and the information provided to him by Dr. Schapira no later than December of 1994 as to his alleged misdiagnosis and mistreatment placed upon him the responsibility of discovering thorough the use of reasonable care any injury that could have been discovered for purpose of this litigation. This court finds that from the facts of this case Conn. Gen. Stat. Sec. 52-584 mandated that he should have discharged this duty within two years of May 1994, if not sooner, but no later than two years of December of 1994. The court further finds that the documents presented disclose no evidence of his discharging this duty.
As stated earlier plaintiff Thomas Danaher's position is that he is entitled to bring suit after December of 1994 because it was not until sometime after that time that Dr. Levis informed him about his diagnoses of attention deficit disorder, and that he therefore became aware that the defendants caused him to suffer actionable harm. The court finds that such a position is inconsistent with the ruling by the Supreme Court inBurns v. Hartford Hospital, 192 Conn. 451 (1984). In its opinion the Supreme Court stated, inter alia, that "[t]he harm need not have reached its fullest manifestation before the statute begins to run." Id. at CT Page 5796 460.[1]
For the foregoing reasons, the motion for summary judgment of defendants Elmerest manor Psychiatric Institute, Inc. and Dr. Ashok Parekh is granted.
Clarance J. Jones, Judge