[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed August 11, 1997
The plaintiff, Ana Rivera, brought this action on April 2, 1996, seeking damages for herself and on behalf of her minor daughter, Nathalie Benjamin, for injuries allegedly incurred by Nathalie as a result of exposure to lead-based paint while residing at 50 Johnson St., Apt. 15, Waterbury, an apartment alleged to be owned by the defendant, Fairbank Management Properties, Inc. The four-count complaint alleges negligence, negligence per se, CUTPA violations, and wrongful collection of rent.
The defendant asserted as a special defense that the CT Page 9747 negligence claims in the first and second counts are barred by the statute of limitations in General Statutes § 52-584 and/or General Statutes § 52-577. The defendant has now moved for summary judgment on these counts claiming that they are time barred by the two year limitation period contained in § 52-584. In the context of a motion for summary judgment, the court's role is not to decide whether the plaintiff complied with the statute but whether an issue of material fact regarding compliance with the statute exists. "A material fact is one that makes a difference in the outcome of a case." Union Trust Co. v. Jackson, 42 Conn. App. 413,418, 679 A.2d 421 (1996).
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v. Mucci,238 Conn. 800, 805, 679 A.2d 945 (1996). The court must "view the evidence in the light most favorable to the nonmoving party."Water Way Properties v. Colt's Mfg. Co., 230 Conn. 660, 664,646 A.2d 143 (1994).
The following facts have been submitted: The plaintiff Ana Rivera ("Rivera") moved into the premises in January 1992, when she was pregnant with the minor child (Rivera Deposition p. 26). Rivera first learned that her minor daughter Nathalie Benjamin ("Nathalie") had very high levels of lead in her blood sometime between October and November 1993 (id., pp. 41-42). Shortly after October 1993, Nathalie began to exhibit loss of appetite, stomach cramping and hyperactivity. In December 1993, doctors told Rivera that Nathalie's symptoms were related to exposure to lead (id., pp. 43-45). The apartment was tested for lead sometime in February 1994, and Rivera was told there were high levels of lead in the apartment (id., pp. 45-46). It was her understanding that Nathalie was being exposed to the lead and it was causing her symptoms (id., p. 46). Sometime after that, Rivera called Irma Lewis, the building manager, to let her know there were high levels of lead in the paint. Rivera testified that Lewis "said that she knows the paint is old, but there is nothing to worry about." Rivera, however, thought there was still lead in the paint (id., pp. 33, 46-47). A few months later, Rivera observed signs posted around the apartment but she did not remember exactly what they said (id., p. 47). Rivera moved out of the premises in October 1994, but two or three months before that some men came into the apartment and scraped the walls, leaving dust and paint chips that she had to CT Page 9748 sweep up (id., pp. 62-65). About two weeks later, Felix, who worked for the defendant, painted over what was scraped off (id., pp. 65-66).
Section 52-584 provides, in pertinent part, that "no action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ." The defendant maintains that the undisputed facts establish that by February 1994 Rivera was aware of sufficient facts to support a cause of action in negligence and thus the two year time limit to bring a negligence cause of action ran before suit was brought against it in April 1996. The plaintiff argues that the continuing course of conduct doctrine should apply to toll the statute of limitations because there are facts from which a jury could find that the defendant was negligent through and after April 2, 1994. The parties have agreed that the court must decide as a matter of law whether the continuing course of conduct doctrine applies.
I. Applicability of Continuing Course of Conduct Doctrine
At the outset, it must be understood that § 52-584 "imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action `within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . .' The second provides that in no event shall a plaintiff bring an action `more than three years from the date of the act or omission complained of . . .' The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs . . . Consequently, an action may be time barred even if no injury is sustained during the three years following a defendant's act or omission." (Citations omitted; emphasis added.)Nardi v. AA Electronic Security Engineering, 32 Conn. App. 205,210-11, 628 A.2d 991 (1993). The three year time limit is a statute of repose because it specifies the time beyond which an action under § 52-584 is absolutely barred. McDonald v. HaynesMedical Laboratory, Inc., 192 Conn. 327, 334, 471 A.2d 646 (1984).
The continuing course of conduct doctrine has been applied to toll the three year repose section of the statute of limitations.Blanchette v. Barrett, 229 Conn. 256, 640 A.2d 74 (1994). The doctrine focuses on negligent conduct, that is "specific tortious acts or omissions [which] may be difficult to identify and may yet CT Page 9749 be remedied." Id. at 276. "[T]he doctrine is generally applicable under circumstances where it may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of action to terminate before allowing the repose section of the statute of limitations to run." (Citations omitted; internal quotation marks omitted.) Sanborn v. Greenwald, 39 Conn. App. 289, 295-96,664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).
Cases applying the continuing course of conduct have all involved the conduct of the defendant prior to the discovery of injury. See, e.g., Blanchette v. Barrett, supra, 229 Conn. 256;Cross v. Huttenlocher, 185 Conn. 390, 440 A.2d 952 (1981); Gigliov. Connecticut Light Power Co., 180 Conn. 230, 240-42,429 A.2d 486 (1980); Handler v. Remington Arms Co., 144 Conn. 316, 321,130 A.2d 793 (1957) (failure to warn "was claim of conduct continuing to the time of injury"). Cases rejecting the doctrine have done so on the basis that the defendant's duty ends when the cause of action accrues. Connell v. Colwell, 214 Conn. 242, 255,571 A.2d 116 (1990) (duty to warn rendered moot by plaintiff's discovery of harm); Beckenstein v. Potter Carrier, 191 Conn. 150, 162,464 A.2d 18 (1983) (no failure to warn when plaintiff was aware of the problem). And while the principle has been stated that a statute of limitations may be tolled because "a duty continued to exist after the cessation of the `act or omission' relied upon [if] there has been evidence of either a special relationship[1] between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to a prior act", Fichera v.Mine Hill Corp., 207 Conn. 204, 210, 541 A.2d 472 (1988); the principle has only been applied to toll a statute of limitations where conduct occurred prior to the discovery of injury. SeeGiglio v. Connecticut Light Power Co., supra, 180 Conn. at 242
(later wrongful conduct of defendant related to prior act, both occurred before injury sustained).
The continuing course of conduct doctrine, with its focus on the conduct of the defendant, naturally applies to the repose section of the statute, with its "act or omission" language. If the act or omission that caused the harm is a series of acts or omissions comprising a continuing course of conduct, the doctrine serves to pinpoint its occurrence at the end of the course of conduct. To satisfy the repose section of the statute, only the endpoint of the conduct need occur within the three years prior to the filing date of the complaint. CT Page 9750
The two year limitation section focuses on the discovery of actionable harm. The continuing course of conduct doctrine is not applicable because the triggering event is no longer the defendant's act or omission but the plaintiff's knowledge of the injury. The term "injury" as used in General Statutes § 52-584
does not mean mere physical injury but requires actionable harm, that is, "[a] breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff . . ." Catz v. Rubenstein,201 Conn. 39, 44, 518 A.2d 98 (1986). Upon discovery of actionable harm the policy behind the continuing course of conduct doctrine, to preserve the ongoing relationship with the hope that any potential harm from a negligent act or omission may yet be remedied, no longer has any force.
The accrual of the cause of action, as opposed to a possible series of acts making up the negligent act, is a single point in time. Permitting the accrual point to be pushed forward as long as it is claimed that the negligent conduct continued has the potential of pushing forward the end of the limitation period indefinitely, as long as the defendant continues in the course of conduct and the plaintiff does not protest. It would, in effect, allow the plaintiff to acquiesce in the defendant's conduct for as long as convenient to the plaintiff, contrary to one of the purposes of statutes of limitations, which "is to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution." Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170,174-75, 127 A.2d 814 (1956). Thus, the court concludes as a matter of law that the continuing course of conduct doctrine does not apply to the two year limitation period in § 52-584, which runs from the date the cause of action accrued.
II. Two Year Limitation Period — Actionable Harm
The two year limitation of § 52-584 does not start to run until "the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." Champagnev. Raybestos-Manhattan Inc., 212 Conn. 509, 521, 562 A.2d 1100
(1989). "The two-year constraint of § 52-584 is a `discovery rule' type of limitations statute, that is it starts when the plaintiff discovers or should have discovered his injury." Hamilton v. Smith,773 F.2d 461, 465 (2d Cir. 1985) (interpreting Connecticut law). CT Page 9751
In a negligence action, "[a] breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action . . . . Prosser Keeton, Torts, (5th Ed.) § 30, pp. 164-65; Calderwood v. Bender, 189 Conn. 580, 584, 457 A.2d 313
(1983); Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375,441 A.2d 620 (1982); Busko v. DeFilippo, 162 Conn. 462, 466, 294 A.2d 510
(1972); Moore v. Bunk, 154 Conn. 644, 649, 228 A.2d 510 (1967). They are therefore necessary ingredients for `actionable harm.'"Catz v. Rubenstein, supra, 201 Conn. at 44. The focus on when a cause of action accrues must be on the plaintiff's knowledge of facts rather than applicable legal theories, id. at 47, because under Connecticut law it is "[a] long-standing principle" that the facts which establish a "primary right in a plaintiff, and an invasion of that right by some delict on the part of the defendant . . . constitute the cause of action." Grimes v. Housing Authority,241 Conn. 236, 248, (1997), quoting with approvalPavelka v. St. Albert Society Branch No. 30, 82 Conn. 146, 147,72 A. 725 (1909).
The court must examine the submitted evidence in light of the allegations of common law negligence in the first count and negligence per se in the second count to determine whether there is any genuine issue of material fact concerning when Rivera discovered or should have discovered that she and Nathalie had suffered actionable harm. Each count will be discussed separately below.
A. First Count — Common Law Negligence
In the first count, the plaintiff alleges common law negligence. The gravamen of the common law negligence count is the claim that the minor plaintiff's injury was caused by her exposure to latent hazardous lead in the apartment, which is alleged to have existed in the apartment before and during the tenancy and which is alleged to have been created, maintained and concealed by the defendant. Under the allegations of constructive notice (¶¶ 4, 5), the landlord's duty and negligent conduct began before Rivera came to reside on the premises in January 1992.[2] Applying the rule ofCatz and Champagne, the common law cause of action would accrue when Rivera discovered that Nathalie had suffered some harm and that the defendant's allegedly negligent conduct had caused it. Thus, the two crucial dates are the date when Rivera knew Nathalie CT Page 9752 had suffered some physical injury as a result of lead exposure and the date she knew that lead was on the premises. Both these dates are undisputed — the former being between October and November 1993, and the latter being sometime in February 1994. Thus, the common law cause of action accrued no later than February 1994.
Although the plaintiff claims that the defendant engaged in additional acts and omissions after the accrual date which may have aggravated Nathalie's injury to (¶ 12(e)(1)(2)), these claims, even if proven, are irrelevant to fixing the point in time for accrual of the cause of action. The allegations in paragraph 12(e) simply amplify and expand on the previous allegations of common law premises liability negligence in the first count by setting forth an alternative theory of negligence based on actual notice. The identity of the cause of action remains essentially the same, however, arising out the defendant's creation, maintenance and concealment of a hazardous lead condition. "A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action." Gallo v. G. Fox Co., 148 Conn. 327,330, 170 A.2d 724 (1961).
In paragraph 12(e), the plaintiffs' first claim is that an improper attempt to abate the lead hazard worsened the lead condition and placed the minor child at increased risk. The alleged exacerbation of the lead condition by a negligently performed abatement does not allow the plaintiff to postpone bringing a suit against the landlord. The statute begins to run when the plaintiff discovers some form of actionable harm, not the greatest amount of harm. "The harm need not have reached its fullest manifestation before the statute begins to run." (Citations omitted.) Burns v. Hartford Hospital, 192 Conn. 451,460, 472 A.2d 1257 (1984).
The second claim in paragraph 12(e) is that the defendant violated a duty to warn of lead hazards and attempted to convince the plaintiff that no harm occurred by telling Rivera there was nothing to worry about after the February 1994 inspection. Any common law duty to warn of the risks involved in any existing latent lead defect ended when the plaintiff discovered there was lead in the apartment. Any comments by the landlord or its agents concerning the risk after the plaintiff's discovery of injury is more in the nature of a denial of the presence of hazards rather than a failure to warn, since the plaintiff had already been made CT Page 9753 aware of the dangers.
As to the first count alleging common law negligence, there is no genuine issue of fact with respect to whether the limitations period began to run more than two years before this action was commenced on April 2, 1996. The common law negligence cause of action accrued no later than February 1994. Accordingly, summary judgment is granted in favor of the defendant on the first count as a matter of law.
B. Second Count — Negligence Per Se
In the second count, the plaintiff alleges negligence per se. In Gore v. People's Savings Bank, 235 Conn. 360, 665 A.2d 1341
(1995), the Supreme Court accepted the proposition, in a personal injury case based on exposure to toxic levels of lead, that statutes and regulations may impose additional duties and obligations upon landlords beyond their limited common law duties the violation of which may constitute negligence per se. Id., 375, 378-80. See 2 Restatement (Second), Property, Landlord and Tenant, § 17.6 (1977). Negligence per se has been recognized as a cause of action independent from common law negligence. Commercial UnionIns. Co. v. Frank Perrotti Sons. Inc., 20 Conn. App. 253, 258,566 A.2d 431 (1989); Sanchez v. General Urban Corp., Superior Court, judicial district of New Haven, Docket No. 378774, 19 CONN. L. RPTR. 97 (Feb. 6, 1997, Lager, J.). Actionable statutory negligence requires the proof of two elements: "In the first place, the plaintiff must be within the class of persons for whose benefit and protection the statute in question was enacted. In other words, the violation of the statute must constitute a breach of a duty owed to the plaintiff. . . . Second, a plaintiff must prove that the violation of the statute, that is, the breach of the duty imposed by the statute, was a proximate cause of his injuries. (Citations omitted.)" Coughlin v. Peters, 153 Conn. 99, 101-02, 214 A.2d 127
(1965); Blancato v. Randino, 33 Conn. App. 44, 47, 632 A.2d 1144
(1993); see Small v. South Norwalk Savings Bank, 205 Conn. 751,760, 535 A.2d 1292 (1988); Wright v. Brown, 167 Conn. 464, 468-69,356 A.2d 176 (1975).
In the second count the plaintiff claims that Nathalie's injury was caused by the defendant violating General Statutes §§19a-111c, 21a-82 (a), 47a-7, 47a-8, and 47a-54f. The gravamen of the negligence per se count is that the defendant's breach of certain statutory duties caused injury to the minor child. Some of the CT Page 9754 statutes relied upon, and their underlying regulations, only impose a duty upon a landlord or building owner after the discovery of toxic levels of lead in the premises. See General Statutes §§47a-8,[3] 19a-111c; Regulations of Connecticut State Agencies §19a-111-1 et seq.[4] Moreover, under the principles of Gore, a landlord may not be held liable for a violation of these statutory and regulatory duties, premised on a condition arising during the course of the tenancy, unless there is proof of notice and an opportunity to remedy the defect. Gore v. People's Savings Bank,supra, 235 Conn. at 388. Thus under the allegations contained in the second count, unlike those contained in the first count, at least in part the defendant had no duty to Rivera or Nathalie resulting from the requirements of law until such time as the defendant was notified that the apartment contained toxic levels of lead, that is sometime after February 1994, and was afforded a reasonable opportunity to remedy the defect.
It is axiomatic that without a duty there can be no breach of duty. Sanborn v. Greenwald, supra, 39 Conn. App. at 297. While the existence of a duty is a question of law for the court, because "[d]uty is a legal conclusion about relationships between individuals, made after the fact . . . [t]the nature of the duty, and the specific persons to whom it is owed, are to be determined by the circumstances . . . ." (Citations omitted; internal quotation marks omitted). RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 385, 650 A.2d 153 (1994). Since actionable harm requires both duty and a breach of duty on the defendant's part, which in the negligence per se context is a violation of the statutory or regulatory standard of conduct, the question is whether there is a genuine issue of material fact regarding when the claimed statutory and regulatory duties arose, when the defendant received notice of a defect violative of law, and when the plaintiff had knowledge of conduct by the defendant violative of law.
Although it is undisputed that the apartment was inspected in February 1994, there are no facts before the court indicating when, as alleged in ¶ 12(e), the defendant received notice of the inspection results from the City of Waterbury. There is evidence that sometime after February 1994, Rivera called Irma Lewis, the building manager, to let her know there were high levels of lead in the paint and was told not to worry about it. A few months later, Rivera observed signs posted around the apartment but she did not remember exactly what they said. Lewis's conduct and the notices may or may not have been in violation of the provisions of § CT Page 975519a-111-3 (e) of the regulations of Connecticut State Agencies. See footnote 4, supra. Sometime after that and a few months before Rivera moved out of the premises in October 1994, the apartment walls were scraped, leaving dust and paint chips, and about two weeks later, the scraped walls were painted over. These activities may or may not have been in violation of the provisions of §§19a-111-4, 19a-111-5, and 19a-111-7 of the regulations of Connecticut State Agencies. See footnote 4, supra.
There are genuine factual issues regarding when the defendant's statutory and underlying regulatory duties arose, when the defendant received notice, and when the plaintiff discovered or should have discovered facts indicating the violation of statutory and regulatory duties. Accordingly, the court cannot conclude as a matter of law that the two year limitations period had run as to the second count before April 2, 1996, and the motion for summary judgment is denied as to the second count.
III. Conclusion
For the reasons stated above, the defendant's motion for summary judgment is granted as to the first count and denied as to the second count.
LAGER, J.