[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
Presently before the court is a motion for summary judgment by the defendants, Newington Children's Hospital ("NCH") and Barry Russman, M.D., on the plaintiff's amended complaint based on the statute of limitation.
The facts alleged in the amended complaint may be summarized as follows. In 1961, at age eight, Roach began treatment at NCH for weakness and fatigability, with treatment continuing until at least May 3, 1993. In the mid 1970's, Dr. Russman, a neurologist employed by NCH and a specialist in neuromuscular disorders, became the physician "primarily responsible" for Roach's care and treatment at NCH. CT Page 9647
In November 1977, Dr. Russman referred Roach to the Neurological Institute at Columbia Presbyterian Hospital for examination and consultation. The Neurological Institute "felt" Roach suffered from a form of spinal muscular atrophy, despite equivocal test and biopsy results. From 1977 onward, Roach's condition deteriorated. Nonetheless, no additional diagnostic tests or evaluations were performed or suggested by the defendants until May 1993.
At that time, Dr. Russman referred Roach to the University of Connecticut Health Center for an in-depth evaluation, which revealed that he suffered from myasthenic syndrome and not spinal muscular atrophy. In 1994, Roach was prescribed medication which provided substantial relief from the symptoms associated with myasthenic syndrome and allowed him to carry on normal daily activities.
By way of amended complaint filed on February 14, 1996. Roach brings the present action against the defendants seeking damages as a result of the defendants, negligent treatment, evaluation and monitoring of his neuromuscular disorder.[1]
On June 8, 1998, the defendants filed a motion for summary judgment accompanied by a memorandum of law and supporting documentation.[2] On July 17, 1998, Roach filed an opposing memorandum of law accompanied by supporting documentation.
"Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806,679 A.2d 945 (1996). Summary judgment should be granted on statute of limitations grounds when "material facts concerning the statute of limitations [are] not in dispute. . . ." Burnsv. Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984); also Rivera v. Fairbank Management Properties, Inc.,45 Conn. Sup. 154, 155, 703 A.2d 808 (1997). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Home Ins. Co v. Aetna Life Casualty Co.,235 Conn. 185, 202, 663 A.2d 1001 (1995).
The defendants argue that the motion for summary judgment should be granted on the ground that the plaintiff's action is time-barred by General Statutes §§ 52-584.[3] The defendants assert that under General Statutes §§ 52-584, a medical CT Page 9648 malpractice action must be commenced, at the very latest, within three years from the date of the alleged wrongful act. In the present matter, the defendants allege that based on the plaintiff's own expert witness, Dr. Charles Demirjian, the acts or omissions complained of occurred in the 1980s, when the defendants deviated from the applicable standard of care.[4]
The defendants argue that because the plaintiff did not commence this law suit until July 28, 1995,[5] the action is time-barred by the repose portion of General Statutes §§ 52-584 for a failure to commence within the three year prescribed period.
In response, the plaintiff counters that the three year statute of limitations is tolled by the "continuous treatment" doctrine. According to the plaintiff, Dr. Russman provided a continuous course of treatment" to the plaintiff for his neuromuscular condition from 1975 until 1994. Thus, the plaintiff claims the statute of limitations does not begin to run until 1994, when the treatment was terminated.
In Connell v. Colwell, 214 Conn. 242, 253, 571 A.2d 116
(1990), our Supreme Court held: "The term malpractice itself may be applied to a single act of a physician or surgeon or, again, to a course of treatment. . . . When . . . the injurious consequences arise from a course of treatment, the statute [of limitations] does not begin to run until the treatment is terminated. . . . The policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on the case from onset to cure. . . ." (Citations omitted; internal quotation marks omitted.) Id.
"The determination of whether the physician-patient relationship has terminated depends upon several factors. These factors include the subjective views of the parties as to whether their relationship had terminated; the length of their relationship; the frequency of their interactions; the nature of the physician's practice; whether the physician had prescribed a course of treatment for or was monitoring the condition of the patient; whether the patient was relying upon the opinion and advice of the physician with regard to a particular injury, illness or medical condition; and whether the patient had begun to consult with another physician concerning the same injury, illness or medical condition. . . ." (Citations omitted.)Blanchette v. Barrett, 229 Conn. 256, 278, 640 A.2d 74 (1994). CT Page 9649
In the present case, the plaintiff maintains that applying the test set forth in Blanchette v. Barrett, supra, 229 Conn. 278
to the facts of this case, warrants a finding by this court that a continuous course of treatment was provided by the defendants, thereby tolling the statute of limitations until the treatment was terminated in 1994.
In support of his claim, the plaintiff has provided documentary evidence, which viewed in a light most favorable to him, establishes the following facts. The physician-patient relationship between the plaintiff and Dr. Russman began in 1975 and continued until 1994. (Plaintiff's Exhibit A, Affidavit of Michael Roach, ¶ 4.) In 1988, the plaintiff was advised by Dr. Russman that no further treatment could be offered for his neuromuscular condition. (Id., ¶ 5.) The plaintiff relied on Dr. Russman's opinion and advice provided at the 1988 office visit and believed that if any treatment became available, Dr. Russman would alert the plaintiff. (Id., ¶ 14.) From 1988 until 1993, the plaintiff considered Dr. Russman to be his treating physician and did not consult other neurologists. (Id., ¶¶ 12-13.) Although the plaintiff did not have scheduled office visits from 1988 to 1993, especially significant is the fact that, according to the plaintiff's allegations, Dr. Russman continued to monitor the plaintiff's condition, despite treatment not being available. Specifically, the plaintiff discussed his status with Dr. Russman through telephone calls and at his children's office visits with Dr. Russman. (Id., ¶¶ 10-11.)Moreover, from 1989 to 1990, the plaintiff participated in a spinal muscular atrophy study at Dr. Russman's suggestion. (Id., ¶ 7-8.) On May 3, 1993, Dr. Russman referred the plaintiff to Dr. Fence at the University of Connecticut Health Center for an in-depth evaluation. (Plaintiff's 's Exhibit B, Letter From Barry Russman, M.D. to Kevin Felice, D.O. dated May 3, 1993.) Thereafter, Dr. Fence reported his findings to Dr. Russman in two letters dated May 21, 1993 and April 26, 1994. (See Exhibit C, Letter From Kevin Felice, D.O. to Barry Russman, M.D., dated May 21, 1993; Exhibit D, Letter From Kevin Felice, D.O. to Barry Russman, M.D., dated April 26, 1994.)
In response, the defendants have provided documentary evidence refuting an ongoing physician-patient relationship after 198 7. Dr. Russman 's supporting documentation provides as follows. Dr. Russman is a board certified pediatric neurologist. (Affidavit of Barry S. Russman, M.D., ¶ 2.) The physician-patient CT Page 9650 relationship between the plaintiff and Dr. Russman began in the early 1970's, with care and treatment being provided on five occasions in the 1980's. (Id.) After June 15, 1987, the plaintiff did not follow up or return for treatment, despite Dr. Russman's recommendation that the plaintiff undergo four months of physical therapy. (Id.; see also Defendants' Exhibit D, Deposition Transcript of Barry S. Russman, M.D., p. 44. ("Exhibit D") From 1988 through 1993, Dr. Russman did not reevaluate, diagnose or treat the plaintiff. (Affidavit of Barry S. Russman, M.D., ¶ 3.) Furthermore, after 1988, the plaintiff did not contact Dr. Russman to report any changes in or discuss his condition until 1993, when the plaintiff was reevaluated and referred for a second opinion. (Id.) Between 1987 and 1993, Dr. Russman did not consider himself to be the plaintiff 's treating physician. (Defendants' Exhibit D, pp. 44, 45.)
Viewing the evidence in a light most favorable to the plaintiff, the court finds that genuine issues of material fact exist as to whether the statute of limitations may be tolled under the doctrine of "continuous treatment. The parties have presented to the court conflicting evidence as to when the physician-patient relationship between Dr. Russman and the plaintiff terminated. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist . . . (Citations omitted.) Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1998) Accordingly, the motion for summary judgment is denied.
ROBERT L. HOLZBERG JUDGE, SUPERIOR COURT