[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #182
 FACTS
This action arises out of a construction contract pursuant to which the defendants renovated and constructed an addition to the plaintiffs' nursing home. The plaintiffs are Donald L. Franco and Parc Health Care, Inc., owner and tenant of the nursing home, respectively. The defendants are Mediplex Construction Company, Inc., Mediplex Construction Company of Connecticut, Inc., Meditrust Mortgage Investments, Inc. (collectively the Mediplex defendants), John N. Eberle, architect, and Ginns/Dubin Engineering. In the complaint, as amended on March 20, 2000[1], the plaintiffs assert causes of action for breach of contract against the Mediplex defendants (first count) and Eberle and Ginns/Dubin (second count), negligence against all defendants (third count), fraudulent, reckless and negligent concealment against all defendants (fourth count), negligent, reckless and intentional misrepresentation against unspecified defendants (fifth count)[2], negligence against Eberle and Ginns/Dubin (sixth count), violations of the Connecticut Unfair Trade CT Page 9958 Practices Act, General Statutes § 42-110a et seq. (CUTPA) against the Mediplex defendants (seventh count) and Eberle and Ginns/Dubin (eighth count). The Mediplex defendants filed an answer and special defenses, including, inter alia, special defenses based on the doctrine of accord and satisfaction and statute of limitations. The plaintiffs filed a reply, in which they generally denied all of the Mediplex defendants' special defenses. Pending before the court is the Mediplex defendants' motion for summary judgment on all of the counts asserted against them in the operative complaint.[3] The Mediplex defendants filed a memorandum of law (Defendants' Memorandum), affidavits and numerous certified documents in support of their motion. The plaintiffs filed a memorandum in opposition to the motion (Plaintiffs' Memorandum), an affidavit, certified copies of deposition excerpts, and several documents. The Mediplex defendants also filed a reply memorandum.
According to the complaint, the plaintiffs and the Mediplex defendants entered into a written contract on April 19, 1985 (turnkey contract[4]), pursuant to which the Mediplex defendants were to construct an addition to and renovate the plaintiffs' nursing care facility. In addition, the Mediplex defendants were to finance the construction and renovation and sell the renovated facility to the plaintiffs. The plaintiffs contend that they fully complied with their obligations under the contract and fully paid the defendants for their services and for the facility. They allege, however, that from approximately July 18, 1990, through August 10, 1990, the Mediplex defendants breached the contract in various specified ways and that the plaintiffs have been damaged as a proximate result of the breach. The plaintiffs claim that the same conduct by the Mediplex defendants constitutes negligence. In addition, the plaintiffs contend that the Mediplex defendants had a duty to disclose material facts to them regarding the renovation and construction work. They allege that the defendants breached this duty by failing to disclose that the work did not conform to the plans and specifications, was not performed in a good and workmanlike manner, and was not completed in compliance with statutes, regulations, codes, ordinances, and licenses. This conduct, according to the plaintiffs, gives rise to causes of action for fraudulent, reckless and negligent concealment and negligent, reckless and intentional misrepresentation. The plaintiffs also contend that the Mediplex defendants' actions were unfair and deceptive, in violation of CUTPA.
In their motion for summary judgment, the Mediplex defendants assert that the plaintiffs' causes of action against them for breach of contract and negligence are barred pursuant to the doctrine of accord and satisfaction. In addition, they contend that all of the counts asserted against them are barred by the applicable statutes of limitations. In CT Page 9959 opposition to the motion, the plaintiffs argue that genuine issues of material fact exist on the following: whether the Mediplex defendants can meet all of the elements of accord and satisfaction; whether the statute of limitations for their cause of action for breach of contract was tolled pursuant to the doctrine of continuing course of conduct; and whether the statutes of limitations for all the causes of action asserted against them were tolled pursuant to the doctrine of fraudulent concealment.
 DISCUSSION
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Orkney v. Hanover Ins. Co., 248 Conn. 195, 201, 727 A.2d 700 (1999). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998). "Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial." Great Country Bank v. Pastore, 241 Conn. 423, 436, 696 A.2d 1254 (1997).
 Accord and Satisfaction (First and Third Counts)
The Mediplex defendants move for summary judgment on the first and third counts of the complaint on the basis of the doctrine of accord and satisfaction. They contend that on April 20, 1990, the parties entered into a new contract in which they agreed that Mediplex of Connecticut's punch list and warranty obligations under the turnkey contract were "deemed fully satisfied, released and terminated" and the "Turnkey Contract has been fully performed by Mediplex, except for those requirements required to be completed in order to close the Meditrust financing." (Defendants' Memorandum, Exhibit 1-C, ¶ 3.) They contend that the new contract was satisfied and that the plaintiffs' causes of CT Page 9960 action for breach of contract and negligence under the turnkey contract are therefore barred pursuant to the doctrine of accord and satisfaction. In response, the plaintiffs contend that disputed issues of fact exist on the question of whether the April 19, 1990 contract is a valid contract of accord. Specifically the plaintiffs contend that there are questions of fact as to whether there was a good faith dispute between the parties, whether there was a meeting of the minds to resolve the dispute and whether the new contract was supported by new consideration.
"When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. . . . An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed." (Citations omitted; internal quotation marks omitted.) Herbert S. Newman Partners v. CFC Construction Ltd. Partnership, 236 Conn. 750, 764, 674 A.2d 1313
(1996). "Although the doctrine of accord and satisfaction usually arises in the context of an agreement between a creditor and a debtor in which the creditor agrees to accept a lesser sum in satisfaction of the whole debt, the doctrine will also discharge a party's rights and duties pursuant to virtually any executory contract where the obligee agrees to accept a substituted performance in satisfaction of the original contract." Fireman's Fund Ins. Co. v. State, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 354178 (June 4, 1996, Hale, J.).
"To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim. . . . The accord must be a new agreement based on new consideration. . . . The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted."(Citations omitted.) Munroe v. Emhart Corp., 46 Conn. App. 37, 42-43, 699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997).
The plaintiffs first contend that the Mediplex defendants cannot meet their burden of showing that there was a good faith dispute between the parties at the time they entered into the new contract. They rely on Franco's affidavit in which he states that he did not become aware that the Mediplex defendants had deviated from the requirements of the plans associated with the turnkey contract until after April 19, 1990. (Plaintiffs' Memorandum, Franco Affidavit, ¶ 15.) The correspondence CT Page 9961 between the parties indicates, however, that at least between March, 1989, and January, 1990, the parties were engaged in discussions regarding problems that the plaintiffs were encountering with the adequacy of the roof, the ventilation system in the kitchen, disproof and dining room and the hot water heater and who was responsible for correcting the problems. (Defendants' Memorandum, Exhibits, 1, ¶ 16; Exhibit 2, ¶ 22; Exhibits 2-N, P, S and T.) The Mediplex defendants have shown that there was a dispute between the parties.
The plaintiffs also contend that, because they were not aware that the defendants had deviated from the plans for the project, they have demonstrated that there are questions of material fact on the issue of whether the parties had an agreement, or meeting of the minds, to resolve their dispute over the turnkey contract. "Without a mutual assent, or a `meeting of the minds,' there cannot be a valid accord." Herbert S. Newman Partners v. CFC Construction Ltd. Partnership, supra,236 Conn. 764. The question of whether the parties had a meeting of the minds or mutually assented that the new contract would resolve their dispute, "is a question of fact for the jury to decide." Gillis v. Gillis, 21 Conn. App. 549, 552, 575 A.2d 230 (1990). In some cases, however, "`[t]he Court can infer the assent or meeting of the minds essential to an accord and satisfaction from the circumstances surrounding and the expressions accompanying the transaction in question.' Swanson v. United Greenfield, Corp., 239 F. Sup. 299, 304
(D. Conn. 1965)." Twin City Pharmacy, Inc. v. Walnut Hill, Inc., Superior Court, judicial district of New Britain, Docket No. 49873 (January 24, 2000, Graham, J.) In circumstances in which "the parties have their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." (Internal quotation marks omitted.) Sturman v. Socha,191 Conn. 1, 10, 463 A.2d 527 (1983). "The intention of the parties is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) Id.
The document that the Mediplex defendants rely to support their claim of accord and satisfaction is a letter from Mediplex Construction Co. to Franco dated April 19, 1990, which purports to "confirm the understanding between [Franco] and Mediplex construction Company of Connecticut, Inc. . . . concerning the following points": (1) Franco's execution of the financing proposal; (2) Mediplex's agreement to reduce the accrued interest on the price of the turnkey contract by $220,000 "[i]n CT Page 9962 consideration of [Franco's] execution of such financing proposal . . . a financing commitment related thereto and the closing of such financing on or prior to May 24, 1990 . . . so long as Meditrust is prepared to provide the full amount of the loan request . . . "(3) Franco's agreement that "Mediplex's punchlist and warranty obligations under the Turnkey Contract are hereby deemed fully satisfied, released and terminated. [Franco's agreement] that the Turnkey Contract has been fully performed by Mediplex, except for those requirements required to be completed in order to close the Meditrust financing." (Defendants' Memorandum, Exhibit 1-C.)
Given the language used in this letter, there are genuine issues of material fact on the question of whether the parties came to a mutual understanding that the agreements they made in this document were intended to resolve their disputes over the turnkey contract. The language does not make it clear that the amount of interest the plaintiffs were required to pay was reduced in consideration for an agreement by the plaintiffs to release the Mediplex defendants from any claims the plaintiffs had against them under the turnkey contract. Rather, the language states that the reduction in interest is offered in consideration for the plaintiffs' execution of the financing documents.
Finally, the plaintiffs contend that this new contract is not a valid contract of accord because it is not supported by new consideration. They base this argument on their contention that the Mediplex defendants were already obligated to complete the project according to the terms of the turnkey contract and plans. The Mediplex defendants contend that this element was met because the plaintiffs agreed to relinquish their claims against the Mediplex defendants in return for the defendants' agreement to reduce the interest due to them by $220,000. "A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount." County Fire Door Corp. v. C.F. Wooding Co., 202 Conn. 277, 281-82, 520 A.2d 1028 (1987). Therefore, the Mediplex defendants have met their burden of showing that the agreement as a whole was supported by new consideration.
The defendants have not met their burden of showing that there is no genuine issue of material fact as to the second element of their claim of accord and satisfaction. The Mediplex defendants' motion for summary judgment on the first and third counts as to their claim of accord and satisfaction is denied.
 Statutes of Limitations
In addition, the Mediplex defendants move for summary judgment on the grounds that all the causes of action asserted against them are barred by CT Page 9963 the applicable statutes of limitations. "Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci,238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriate on statute of limitations grounds when the "material facts concerning the statute of limitations are not in dispute. . . ." Burns v. Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984). Nevertheless, "summary judgment is [only] proper when the affidavits do not set forth circumstances which would serve to avoid or impede the normal application of the particular statute of limitations." Collum v. Chapin,40 Conn. App. 449, 453, 671 A.2d 1329 (1996). In Connecticut, a law suit is commenced when a proper officer serves a writ of summons and complaint on the defendant. General Statutes § 52-45a; see also Rana v. Ritacco, 236 Conn. 330, 337, 672 A.2d 946 (1996). Here, the parties agree that the plaintiffs commenced this action on July 17, 1996, when the writ, summons and complaint were served on Meditrust Mortgage Investments, Inc. (Defendants' Memorandum, Exhibit 3; Plaintiffs' Memorandum, p. 4.)
The court must resolve a procedural matter before considering the substantive issues raised by the parties. The Mediplex defendants assert that the plaintiffs should not be allowed to rely on the tolling doctrines of continuing course of conduct and fraudulent concealment because they failed to affirmatively plead them in avoidance of the defendants' statute of limitations defense.
Pursuant to Practice Book § 10-57, "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. . . ." "In order to raise a claim of fraudulent concealment, the party challenging a statute of limitations defense must affirmatively plead it." Beckenstein v. Potter Carrier, Inc.,191 Conn. 150, 156, 464 A.2d 18 (1983). A review of the relevant pleadings reveals that the plaintiffs have not affirmatively pleaded continuing course of conduct or fraudulent concealment. In the fourth, fifth and seventh counts of the operative complaint, the plaintiffs did include conclusory assertions that their causes of action are timely because the defendants made fraudulent representations to the plaintiffs about the quality of the work. They do not, however include factual allegations sufficient to support a claim of fraudulent concealment or a claim of continuing course of conduct. The plaintiffs' reply to the Mediplex defendants' special defenses contained only a general denial thereof.[5] A general denial of the defense of limitations is not sufficient. Id. "The plaintiffs are charged with the knowledge of the rules of practice and should have pleaded more than a simple denial to the defense of the statute of limitations if they wished to plead in avoidance." Simmons v. Southern Connecticut Gas Co., Inc.,7 Conn. App. 245, 251, 508 A.2d 785 (1986). Accordingly, the plaintiffs' CT Page 9964 claims that the doctrines of continuing course of conduct and fraudulent concealment tolled the statutes of limitations applicable to their causes of action are "not properly before the court." Beckenstein v. Potter 
Carrier, Inc., supra, 191 Conn. 163.
Even assuming the plaintiffs had properly raised their claims that the doctrines of continuing course of conduct and fraudulent concealment tolled the statutes of limitations, as detailed below, they have not substantiated their claims.
Continuing Course of Conduct (First Count)
The Mediplex defendants move to strike the plaintiffs' cause of action for breach of contract on the ground that this cause of action accrued more than six years before the plaintiffs commenced this action and thus is barred by the statute of limitations. In response, the plaintiffs apparently concede that this cause of action accrued more than six years prior to the date on which they commenced this action. They contend, however, that their action is timely because the statute of limitations was tolled pursuant to the doctrines of continuing course of conduct.[6]
A cause of action for breach of contract is subject to the six year statute of limitations of General Statutes § 52-576 (a), which provides, in pertinent part, that "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues. . . ." Under Connecticut law, a cause of action for breach of contract "accrues," i.e., "is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." (Internal quotation marks omitted.) Beckenstein v. Potter Carrier, Inc., supra, 191 Conn. 156. In the context of construction contracts, a cause of action for breach of contract accrues on the date that the construction is complete. Id. The courts recognize that, "while the application of [this] rule may result in occasional hardship, it is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action." (Internal quotation marks omitted.) Id.
The plaintiffs' cause of action for breach of contract is premised on allegations that the Mediplex defendants failed to prepare the plans and specifications adequately, timely, competently and in a good and workmanlike manner, and failed to hire competent architects and engineers to do so; they failed to perform the construction and renovation work and installation of specific structures and equipment in a good and workmanlike manner and in accordance with plans and specifications, the contract and with applicable laws, codes and regulations, but they CT Page 9965 represented to the plaintiffs that they had done so; and they failed to adequately supervise, inspect and review the construction work. All of these allegations relate to conduct that the Mediplex defendants allegedly engaged in while preparing for, conducting and overseeing the construction and renovation work that they did for the plaintiffs. Although the plaintiffs generally allege that this conduct occurred from approximately July 18, 1990, through August 10, 1990, they do not offer any evidence in support of this allegation. Instead, the evidence indicates that the Mediplex defendants completed the construction and renovation work in March, 1989, and that after March 29, 1989, Franco had full possession of the facility and was using it as a nursing home. (Defendants' Memorandum, Exhibit 2, ¶¶ 14, 16, Exhibit 2-M.) The evidence also indicates that from approximately March, 1989, to April, 1990, the parties engaged in discussions about various items which they characterize as punch list[7] and warranty items and that the only work that the Mediplex defendants performed after the plaintiffs took possession involved such items. (Defendants' Memorandum, Exhibit 2, ¶¶ 14, 16, 20; Exhibits 2-M through U.) Furthermore, the evidence does not show that the Mediplex defendants engaged in any construction or repair work after April, 1990. Indeed, according to the evidence, on July 18, 1990, Franco signed an affidavit in which he stated that "within the last 90 days, including the date hereof, no person has furnished any labor, services or materials in connection with the construction or repair of any building or improvements on the [facility]." (Defendants' Memorandum, Exhibit 1, ¶ 20, Exhibit 1-E.) Thus, the plaintiffs' cause of action for breach of contract accrued in April, 1990, at the latest and, absent tolling, would be barred by the six year statute of limitations set out in General Statutes § 52-576 (a).
Under Connecticut law, "a statute of limitations may be tolled under the . . . continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, 252 Conn. 193,203-04, 746 A.2d 730 (2000). "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Blanchette v. Barrett, 229 Conn. 256,276, 640 A.2d 74 (1994). Pursuant to this doctrine, "the statute [of limitations] does not begin to run until [the] course of conduct is completed." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra, 252 Conn. 206-07 n. 12. "[T]he doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the . . . statute of limitations to run. . . ." (Citation CT Page 9966 omitted; internal quotation marks omitted.) Sanborn v. Greenwald,39 Conn. App. 289, 295, 664 A.2d 803, cert. denied, 235 Conn. 925,666 A.2d 1186 (1995). For example, in the context of construction projects, "where a contractor is still in control of the work so that the problem might be remedied, then the statute may not begin to run until the course of conduct, in this case, the work on the project, is completed." Peoples Savings Bank of New Britain v. T.R. Paul, Inc., Superior Court, judicial district of Hartford, Docket No. 571700 (January 27, 2000, Beach, J.). The Connecticut Supreme Court has held that "in order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Sherwood v. Danbury Hospital, supra, 252 Conn. 203.
The plaintiffs contend that both variations of the doctrine apply in this case. First, although their complaint is devoid of any allegations that the parties had a "special relationship," in their memorandum opposing summary judgment, plaintiffs allege that specific provisions of the agreement between the parties imposed a continuing duty on the Mediplex defendants to notify the plaintiff of any changes in or substitution of materials which would have a materially adverse impact of the quality of the construction.[8] The plaintiffs argue that these provisions imposed an obligation on the Mediplex defendants that continued at least until July 18, 1990, the date on which the plaintiffs claim that the Mediplex defendants conveyed the premises to Franco. It is apparent, however, that although July 18, 1990, was the date on which the parties entered into an agreement regarding the financial portions of the turnkey contract, the Mediplex defendants had completed the renovation and construction work at least by April 19, 1990. (Defendants' Memorandum, Exhibit 1-E.) Moreover, it is undisputed that sometime prior to April 19, 1990, the plaintiffs had possession over both the newly constructed and renovated portions of the facility. (Defendants' Memorandum, Exhibit 2, ¶¶ 11, 16.) Even viewed in the manner most favorably to the plaintiffs, neither the allegations of the complaint nor the specific provisions of the turnkey contract cited by the plaintiffs indicate that the parties had a relationship sufficient to support the tolling of the limitations period to July 18, 1990. At most they had an on-going business relationship and any duty the Mediplex defendants may have had to inform the plaintiffs about changes in and substitutions of materials expired when the defendants finished the renovation and construction work CT Page 9967 and the plaintiffs resumed their control over the facility. Although "[w]hat is meant by the special relationship required by this principle is not clear . . . it does mean something more than evidence of either a terminated . . . or on-going relationship." (Citations omitted.) Rivera v. Fairbank Management Properties, Inc., 45 Conn. Sup. 154, 159-60 n. 1,703 A.2d 808 (1997).[9]
The plaintiffs also assert that the second variation of the continuing course of conduct doctrine applies to this case. Pursuant to this variation, "a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . . A second requirement for the operation of the . . . doctrine is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . This court has held this requirement to be satisfied when there was wrongful conduct of a defendant related to the prior act." (Citations omitted; internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra, 252 Conn. 204-05. It is again noted that the "duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." Id., 203.
The plaintiffs again base their argument on their contention that the Mediplex defendants had a continuing duty to inform them of changes in and substitutions of materials and that the defendants engaged in subsequent wrongful conduct by not informing them that they had done so. Even assuming that the Mediplex defendants had a duty to supervise, inspect and review the construction work, as is alleged by the plaintiffs, the evidence indicates that the Mediplex defendants completed the renovation and construction work by April, 1990, and that after that date, they were no longer in control of the facility. Thus to the extent that the Mediplex defendants may have had a continuing duty to the plaintiffs, the duty expired as of April, 1990.
Moreover, case law indicates that in order to rely on this tolling doctrine, the plaintiffs must show that the Mediplex defendants engaged in "subsequent wrongful conduct" apart from their failure to notify the plaintiffs of changes in and substitutions of materials. Fichera v. Mine Hill Corp., 207 Conn. 204, 210, 541 A.2d 472 (1988). The plaintiffs have not done so. "We are aware of no authority holding that the perpetrator of a fraud involving merely a vendor-vendee relationship has a legal duty to disclose his deceit after its occurrence and that the breach of that duty will toll the statute of limitations." Id. "[T]he continuing course of conduct is not the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing." Connell v. Colwell, 214 Conn. 242, 255,571 A.2d 116 (1990). CT Page 9968
The Mediplex defendants have presented evidence that the plaintiffs' cause of action for breach of contract is barred by the statute of limitations and that the plaintiffs failed to show that the statute was tolled pursuant to the doctrine of continuing course of conduct.
Fraudulent Concealment (First and Third through Seventh Counts)
In the third through fifth and seventh counts of the operative complaint, the plaintiffs assert causes of action against the Mediplex defendants for negligence, fraudulent, reckless and negligent concealment, negligent, reckless and intentional misrepresentation and violation of CUTPA, respectively. The Mediplex defendants move for summary judgment on these counts on the grounds that these causes of action accrued more than three years before the plaintiffs commenced this lawsuit and thus are barred by the applicable statutes of limitations. In opposition to the motion, the plaintiffs contend that these causes of action, as well as their cause of action for breach of contract, are timely because the statutes of limitations were tolled pursuant to the doctrine of fraudulent concealment, as codified in General Statutes § 52-595.
The plaintiffs' causes of action for negligence, negligent and reckless concealment and negligent and reckless misrepresentations are governed by the limitations of General Statutes § 52-584.[10] General Statutes § 52-584 provides, in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ." Under this statute, the phrase "`date of the act or omission complained of . . . is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra,252 Conn. 202. "The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs . . . Consequently, an action may be time barred even if no injury is sustained during the three years following a defendant's act or omission." Nardi v. AA Electronic Security Engineering, Inc., 32 Conn. App. 205, 210-11,628 A.2d 991 (1993).
The plaintiffs' causes of action for fraudulent and reckless concealment and reckless and intentional misrepresentation are governed by the limitations of General Statutes § 52-577.[11] General Statutes § 52-577 provides: "No action founded upon a tort shall be CT Page 9969 brought but within three years from the date of the act or omission complained of." "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed. . . . The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Citations omitted; internal quotation marks omitted.) Collum v. Chapin, 40 Conn. App. 449, 451,671 A.2d 1329 (1996).
Pursuant to CUTPA, "[a]n action . . . may not be brought more than three years after the occurrence of a violation of this chapter." General Statutes § 42-110g (f). The three year period begins to run from the date that the violation occurs, and not from the date that the plaintiff discovers the violation. Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp., 245 Conn. 1, 45-46, 717 A.2d 77 (1998).
According to the operative complaint, the plaintiffs' tort-based causes of action and their CUTPA claim are premised on the same allegations that they asserted in their cause of action for breach of contract. The plaintiffs specifically allege that this conduct occurred from approximately July 18, 1990, through August 10, 1990. Because the plaintiffs did not commence this action until July 17, 1996, it is clear that these causes of action are barred by the applicable statutes of limitations unless the plaintiffs can show that the statutes were tolled. The plaintiffs appear to concede that this point, and argue that the statutes of limitations were tolled pursuant to the doctrine of fraudulent concealment.
General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence. According to the Connecticut Supreme Court, "to prove fraudulent concealment, the plaintiffs [are] required to show: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) [the] defendant's intentional concealment of these facts from the plaintiffs; and (3) [the] defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action." Bartone v. Robert L. Day Co. Inc., 232 Conn. 527, 533, 656 A.2d 221 (1995). "To meet this burden, it [is] not sufficient for the plaintiffs to prove merely that it was CT Page 9970 more likely than not that the defendants had concealed the cause of action. Instead, the plaintiffs [have] to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence." (Internal quotation marks omitted.) Id.
As to the first element, the plaintiffs contend that because the Mediplex defendants performed the construction and renovation work on the facility, prepared the plans for the work, ordered the materials used in the project, and had possession and control of the portions of the facility under renovation and construction, they must have had actual knowledge of the facts necessary to establish the Plaintiffs' cause of action." (Plaintiffs' Memorandum, p. 14.). They do not, however, present evidence sufficient to raise a genuine issue of fact on this element. Instead, they rely solely on their allegations that such knowledge should be imputed to the defendants. In Bartone v. Robert L. Day Co. Inc., supra, 232 Conn. 533-34, the court found that this type of allegation is not sufficient to sustain a claim of fraudulent concealment. The court explained that, "[t]he plaintiffs' argument on fraudulent concealment is principally predicated on the proposition that, because a septic system is buried in the course of construction, any defects arising out of its negligent construction or out of its failure to correspond with representations about its reliability are necessarily concealed by those who have any responsibility, direct or indirect, for its construction. If that argument were to prevail, it would toll, until the time of discovery, the statute of limitations with respect to any latent defects in a construction project." Id. "Fraud is not to be presumed, but must be strictly proven." (Internal quotation marks omitted.) Connell v. Colwell, supra, 214 Conn. 252.
As to the second and third elements, the plaintiffs claim that the defendants' failure to disclose the changes that were made in the materials used in the project is evidence that the Mediplex defendants intended to conceal the changes from the plaintiffs and did so to delay the plaintiffs in filing this lawsuit. They also contend that the course of dealing between the parties beginning in January, 1990, when the plaintiffs wrote to the Mediplex defendants regarding the adequacy of the hot water heater and threatened legal action, evidences such intent. In order to meet the third element, however, the plaintiffs must present evidence that the defendants' actions were "directed to the very point of obtaining the delay of which [they] afterward [seek] to take advantage by pleading the statute." (Internal quotation marks omitted.) Bartone v. Robert L. Day Co. Inc., supra, 232 Conn. 533-34 n. 5. Assuming that the Mediplex defendants did change or substitute materials used in the project, and did not inform the plaintiffs that they had done so, the plaintiffs have not presented "clear, precise and unequivocal evidence" that the defendants concealed this information from the plaintiffs in CT Page 9971 order to delay the plaintiffs in filing suit. Mere allegations that the defendants misrepresented information to the plaintiffs are "not sufficient to establish a genuine issue of material fact concerning the intent of the defendant." Connell v. Colwell, supra, 214 Conn. 251.
Finally, the doctrine of fraudulent concealment cannot be used to toll a statute of limitations "when the plaintiff discovers some form of actionable harm." Mountaindale Condominium Assn., Inc. v. Zappone, ___ Conn. App. ___, Docket No. AC 18538, (scheduled for publication in the Connecticut Law Journal, August 15, 2000.) "`Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." Lambert v. Stovell, 205 Conn. 1, 6, 529 A.2d 710 (1987). The evidence indicates that at least as early as March, 1989, the plaintiffs became aware of some of the problems with the facility and engaged in discussions with the Mediplex defendants regarding possible remedies. (Defendants' Memorandum, Exhibits 2-N — T.) Indeed, the evidence shows that as early as January, 1990, the plaintiffs were aware of their right of action, at least as to the adequacy of the hot water heater. (Defendants' Memorandum, Exhibit 2-T.) "[T]he statute [of limitations] begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof." Lambert v. Stovell, supra, 205 Conn. 6.
"[I]t is incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." Connell v. Colwell, supra, 214 Conn. 251. In this case, as in Connell v. Colwell, "the plaintiff has simply failed to establish any such factual predicate concerning the defendant's alleged fraudulent concealment." Id. When a plaintiff fails to meet this burden, a defendant's motion for summary judgment should be granted. Id., 252.
The plaintiffs have failed to meet their burden of showing that there is a genuine issue of material fact as to the first and third elements of their claim of fraudulent concealment and have thus failed to show that the statutes of limitations for their causes of action should be tolled on this basis. Mediplex defendants' motion for summary judgment as to the first, third, fourth, fifth and seventh counts is granted.
 CONCLUSION
Mediplex defendants motion for summary judgment is granted on the basis that the causes of action asserted against them are barred by the applicable statutes of limitations.
Owens, J. CT Page 9972